Third degree burglary; twenty years and one day.
Mrs. Gladys Thrasher's house in Sheffield, Alabama, was broken into on October 23, 1980. The back door was "jimmied" and two wedding bands, a simulated diamond set, some two dollar bills, and "a whole bunch" of old silver coins were taken. Mrs. Thrasher reported the burglary at approximately 3:00 p.m.
Lt. Doug Aycock of the Sheffield Police Department testified that at approximately 2:30 p.m. he received information that appellant was attempting to sell some old coins at the local pool hall. When Mrs. Thrasher reported the break-in at her house and the missing coins, Aycock began searching for appellant. Lt. Aycock located appellant at his home around 5:00 p.m. the same day. Appellant and a companion, James Gargis, were taken to the police station for questioning.
While he was questioning Gargis, Aycock observed appellant hiding something beneath the cushion of the chair in which he was sitting. Aycock searched the chair prior to questioning appellant and recovered two wedding bands. These were later identified by Mrs. Thrasher as two of the rings taken from her house.
Lt. Aycock testified that he advised appellant of his rights by reading appellant the Miranda warnings from a printed form. Appellant was given an opportunity to read these himself prior to signing the waiver of rights at the bottom of the form. After appellant signed the waiver of rights, Lt. Aycock requested appellant's permission to search his house. Appellant agreed to this and signed a form entitled "Form for Consent to Search." Aycock stated that he read this form to appellant and also gave appellant an opportunity to read it before appellant signed the form. The waiver of rights form was signed at 5:20 p.m. The consent to search form does not state the time it was signed.
Aycock and another officer then returned to appellant's house and found, in appellant's bedroom, a clear plastic box containing old coins. Mrs. Thrasher later identified the box and its contents as her property. Aycock returned to the police station with the box of coins and questioned appellant about them. At that time, appellant gave an oral statement.
According to appellant, he had been with one Bobby Barnett around 11:00 a.m. that day. Barnett had gone to a house on the corner of Frankfort Avenue and Sixth Street. He returned approximately five minutes later and gave appellant two rings and "a handful" of old coins. Appellant stated that Barnett told him "to get rid of it" and that he [Barnett] would give appellant half of the money. Aycock reduced this statement to writing, and it was typed up by a secretary. The statement was then read to and signed by appellant.
Lt. Aycock stated that appellant gave this statement around 6:30 or 7:00 p.m. He further testified that no promises or threats were made to induce appellant to sign the waiver of rights, the consent to search, or the statement. He stated that appellant did not appear to be under the influence of alcohol or drugs, and that appellant appeared to understand the nature of each document. *Page 972 
 I
Appellant contends that his consent to the search of his house was not voluntarily given, and, therefore, the trial court erred in denying his motion to suppress both the consent to search form and the evidence seized during the search.
When relying on consent to justify a search, the burden is on the State to show that the consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788,20 L.Ed.2d 797 (1968). The trial court is in the best position to determine the voluntariness of the consent, Scott v. State,409 So.2d 978 (Ala.Crim.App. 1981), and is to make this determination from the totality of the circumstances involved.Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973).
From the evidence adduced by the State, we think the trial court was correct in finding that appellant's consent was voluntary. Appellant was informed of his Miranda rights and signed a waiver of those rights. He was informed of the object of the search before he consented. No threats or promises were made to appellant, nor was he told that he had to consent. In fact, the consent to search form read to and signed by appellant stated that he had the right to refuse to consent to the search.
Appellant asserts that his consent was not voluntary because he was not advised that he had a right to consult counsel before consenting to the search nor informed that anything found during the search could and would be used against him. While these may be factors to be considered in deciding whether consent was voluntarily given, see United States v. Smith,543 F.2d 1141 (5th Cir. 1976), cert. denied, 429 U.S. 1110,97 S.Ct. 1147, 51 L.Ed.2d 564 (1977), where Miranda warnings have once been given, repeated specific warnings of Fourth Amendment rights are not necessary to obtain a valid consent to search.United States v. Jones, 475 F.2d 723 (5th Cir.), cert. denied,414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973). See UnitedStates v. Smith, supra; Behel v. State, 390 So.2d 662
(Ala.Crim.App. 1979), cert. denied, 390 So.2d 671 (Ala. 1980);Barclay v. State, 368 So.2d 579 (Ala.Crim.App.), cert.denied, 368 So.2d 581 (Ala. 1979).
 II
Appellant maintains that his statement should have been suppressed because it was not voluntarily given. He emphasizes the fact that he was not re-advised of his Miranda rights prior to giving the statement.
It is well settled that once Miranda warnings have been given and a waiver made, a failure to repeat the warnings before a subsequent interrogation will not automatically preclude the admission of an inculpatory response. Fagan v. State,412 So.2d 1282 (Ala.Crim.App. 1982); Smoot v. State, 383 So.2d 605
(Ala.Crim.App. 1980). Whether the Miranda warnings must be repeated depends on the facts of each individual case, with the lapse of time and the events which occur between interrogation being relevant factors to consider. Fagan v. State, supra;Jones v. State, 47 Ala. App. 568, 258 So.2d 910 (1972).
In this case, the time lapse between the Miranda warnings and appellant's statement was one to one and three-quarters hours. In the intervening time period, the officers were searching appellant's house with appellant's knowledge and consent. Under these circumstances, we are of the opinion that repeatedMiranda warnings were not necessary. See Fagan v. State, supra.
Appellant also contends that his statement was inadmissible because it was the product of an illegal search. As we have previously determined that the search of appellant's house was legal, no discussion of this argument is needed.
 III
At appellant's sentencing hearing, the State introduced evidence of appellant's six prior felony convictions and requested that appellant be sentenced as an habitual offender. Appellant's attorney stated that he *Page 973 
had no objection to the admission of the evidence and, further, stated that he was aware of the prior convictions. The trial judge accepted the State's recommendation and sentenced appellant to thirty years. After a hearing on appellant's motion to reconsider the sentence, this sentence was reduced to twenty years and one day.
Appellant now contends that the Habitual Offender Act was improperly applied in enhancing his punishment because he did not receive written notice at a reasonable time prior to the sentencing hearing that the State intended to invoke the Habitual Offender Act. Although we recognized that "written notice appears to be the form of notice presumed proper,"Hollins v. State, 415 So.2d 1249, 1254 (Ala.Crim.App. 1982), written notice is not required by Rule 6 (b)(3)(ii), Alabama Rules of Criminal Procedure, Temporary Rules.
It appears that some sort of notice was received by appellant as his counsel stated at the hearing:
 "[A]lthough there was no written notice or notice given to myself or Mr. Hollander prior to the trial, that he was to be tried as a habitual offender, I do understand now that the State is asking that he be treated as a habitual offender for purposes of sentencing." [Emphasis added]
The trial court correctly noted at that point that notice prior to trial is not required. Holley v. State, 397 So.2d 211
(Ala.Crim.App.), cert. denied, 397 So.2d 217 (Ala. 1981). However, no objection was made on this or any other ground to appellant's treatment as an habitual offender. See Thompson v.State, 405 So.2d 717 (Ala.Crim.App.), cert. denied,405 So.2d 721 (Ala. 1981). The trial court will not be placed in error on appeal for grounds not specified during the sentencing hearing.Smith v. State, 409 So.2d 455 (Ala.Crim.App. 1981).
For the reasons stated above, the judgment of the Colbert Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.