494 So.2d 772 (1986)
Ex parte Danny Joe BRADLEY.
(Re Danny Joe BRADLEY v. STATE of Alabama).
85-424.
Supreme Court of Alabama.
July 25, 1986.
Rehearing Denied September 12, 1986.
Ralph L. Brooks and Thomas E. Dick, Anniston, for petitioner.
Charles A. Graddick, Atty. Gen., and William D. Little and Martha Gail Ingram, Asst. Attys. Gen., for respondent.
PER CURIAM.
This is a death penalty case. Pursuant to statutory mandate (Code 1975, § 13A-5-53) and the rules of this Court (Rule 39, A.R.A.P.), we granted Defendant's petition for review of the Court of Criminal Appeals' affirmance of his conviction and sentence. For a detailed statement of the facts, as well as an at-length treatment of each of nine separate issues, see Bradley v. State, 494 So.2d 750 (Ala.Crim.App. 1986). After careful review of the entire record of trial, and the Court of Criminal Appeals' opinion, along with the briefs and argument of able and experienced counsel, we are constrained to affirm the Court of Criminal Appeals' judgment upholding the conviction and sentence of death.
AFFIRMED.
TORBERT, C.J., and MADDOX,[*] SHORES, ADAMS and STEAGALL, JJ., concur.
JONES, ALMON, BEATTY and HOUSTON, JJ., dissent.
JONES, Justice (dissenting).
I agree with the Court of Criminal Appeals' opinion on each of the issues addressed therein except one: the failure of the State to make a full disclosure of information known to it pertaining to the report of an alleged confession to the crime made to the investigating police officer by a third party.
The Court of Criminal Appeals' treatment of this issue is contained in Part IV of its opinion. Defendant's counsel address this issue in their brief as follows:
"Appellant does not find fault with the citation of authority used by the Court of Appeals in its decision. Appellant submits, however, the lower court erred in its application of the facts of the case to the law.
"The court found that the State, through Detective Sergeant Brown, had informed defense counsel that Ricky McBrayer had in fact confessed, but that it had been investigated and found to be without grounds and not true. This is not what the facts revealed, and an examination of the record shows that Sergeant Brown's testimony was that he *773 informed counsel of an alleged confession and that the report of the confession, not the confession, was without grounds and not true. What was disclosed to defense counsel indicated that (1) there was no confession, (2) the report of the confession was without grounds, and (3) no disclosure was made that Glenn `Coffee' Burns was the person to whom the confession had been made. While appellant submits that the lack of disclosure was not intentional prosecutorial misconduct, the evidence not disclosed was material to the guilt or punishment of the appellant, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence of a third party's confession is of a nature that should be disclosed and would meet the criteria for a Brady violation, i.e., (1) the prosecution suppressed the evidence, (2) the evidence was of a favorable character to the defense, and (3) the evidence was material. Sellers v. Estelle, 651 F.2d 1074 (5th Cir.1981), cert. den., 455 U.S. 927, 102 S.Ct. 1292, 71 L.Ed.2d 472 (1982); Knight v. State, 478 So.2d 332 (Ala.Cr.App.1985). The evidence suppressed was of a material nature and there certainly is a reasonable possibility that its disclosure would have affected the result of the proceeding. The evidence in this case was entirely circumstantial, as noted by the Court of Criminal Appeals.
"The name of Ricky McBrayer was known to the defense and was the subject of a Motion for Discovery and the subject of their interview with Sgt. Brown. But, again, it must be emphasized that the interview did not reveal that McBrayer had confessed, nor that he had confessed to Glenn Burns. In fact, the context of the interview had the effect of closing the door on further inquiry concerning McBrayer's confession, since Sgt. Brown had indicated that the report of the confession had been found to be untrue. The nature of the evidence suppressed was clearly exculpatory in character and material to the guilt or punishment of the Appellant. The failure of the State to disclose it to the defense rendered a fair trial impossible and a constitutional violation inevitable. The evidence would have created a reasonable doubt as to Appellant's guilt, regardless of whether or not it was trustworthy or admissible.... State v. Kimberly, 463 So.2d 1109 (Ala.1984).
"Appellant also would find error in the lower court's opinion wherein it held that the State's duty to disclose McBrayer's confession did not include the duty to disclose the person to whom the confession was made. Appellant submits that even assuming that the facts were as found by the Court of Appeals, the State would be required under Brady and its progeny to fully disclose the exculpatory evidence." (Emphasis in the original.)
Because the Court of Criminal Appeals' factual statement is placed in issue, I have studied the record for a better understanding of the precise context of Defendant's "newly discovered evidence" ground for a new trial. Initially, I observed that the record of all pre-trial proceedings, as well as the record of trial, is totally silent as to any purported or alleged confession to the crime by any third party. To be sure, as indicated in Defendant's brief, his pre-trial discovery motion, inter alia, requests of the State:
"D. Any and all statements, notes or memorandums of conversations taken when any of the following names were mentioned as suspects or possible suspects: Phil Manis, Robert Roland, Ricky McBrayer, Jimmy Isaac, Johnny Bishop, Diane Mobley, Donald Roberts, Keith Sanford, Phillip Bass, Bill Goodwin and Charlie Grissom."
The trial court granted the motion pursuant to Rule 18, Temporary Rules of Criminal Procedure, but the records and documents turned over to Defendant's counsel contained no reference to any confession or statement by another party admitting guilt. Other than Item D of Defendant's discovery motion, containing the name of Ricky McBrayer as a "possible" suspect, *774 the only mention of a third-party confession, including any knowledge thereof on the part of Defendant's counsel, was adduced in an evidentiary hearing on the Defendant's post-judgment motion for a new trial.
Although certain of the testimony at this hearing is not altogether clear and although there are unfilled gaps in the entire sequence of events, I was able to piece together the following scenario: About four days following Rhonda's death, a private citizen, Glenn Burns, accompanied by another private citizen, Fred Baker, reported to Chief of Police Amberson, that he and Ricky McBrayer had met at a bar in Piedmont the third night after Rhonda's death; that, after leaving the bar and while riding in Burns's car, McBrayer told him he had been with Rhonda the night of her death, and that he had accidentally killed her.
According to the post-conviction testimony of the then-former Chief Amberson, he related this information to certain members of the investigative team, who subsequently reported back to him that they were "able through investigation to locate the whereabouts of McBrayer on the night this girl was killed"; and, from their investigation, they concluded that McBrayer was not involved. Neither Amberson nor any other members of the investigative team made any notes or records of either Burns's statement or any of the follow-up investigation or conclusions made therefrom. Nor did he or anyone else to his knowledge inform either the prosecution or the defense counsel of any of these events, conversations, or conclusions; thus, the records and documents released to Defendant's counsel in response to the court's discovery order contained no such information.
Several days before the hearing on the new trial motion, Burns again reported to Piedmont's present Police Chief, Ricky Doyle, the circumstances of McBrayer's "confession." The reason for his second visit, according to Burns, was "[b]ecause [McBrayer] told down at the service station he was going to get me for going around saying he killed the girl." On cross-examination by Defendant's counsel, Burns reiterated that his reason for his second visit to the police station was that he indirectly received a threat from Ricky McBrayer that, if "[I] came down here and testified, he [McBrayer] was going to kill [me]."
The only testimony taken at the first phase of the post-conviction hearing was that of Glenn Burns and former Chief Amberson. It is obvious from his vigorous cross-examination of Burns that the district attorney did not know the source of defense counsel's information concerning Burns's report to the police relating McBrayer's alleged confession. Despite repeated questions from the district attorney seeking a contrary reply, Burns stood fast to his simple unequivocal statement, both as to McBrayer's admission of the crime and that he (Burns) had not given this information to Defendant, Defendant's counsel, or any member of Defendant's family.
Apparently satisfied with Burns's explanation, the district attorney then requested a continuance:
"MR. FIELD: Judge, we have misplaced some information that we had in regard to this case, and it may be of evidentiary value in this particular proceeding. If we find that information, would we have the opportunity to go ahead, and assuming it's relevant and legal evidence, submit it sometime say no later than
"THE COURT: Let me ask this. Are you asking the Court in effect to carry this hearing over on the motion for new trial?
"MR. FIELD: Yes, sir; yes, sir, I guess I am."
Thereupon, the motion for continuance was granted from October 27, 1983, to January 3, 1984, at which time the State called, as its only remaining witness, Detective Sgt. Charles Brown, who had participated in the investigation of Rhonda's death and in the arrest of Defendant.
After establishing, through a series of preliminary questions and answers, that, during the course of his investigation, he *775 had received "some information that Ricky McBrayer was supposed to have confessed to this particular crime," Sgt. Brown stated that, before the trial of the case, he told defense counsel "what he had learned in regard to Mr. McBrayer's alleged confession." The crucial part of his testimony is contained in the following questions and answers:
"Q Did you have the occasion to relay to [defense counsel] any information in regard to the alleged confession by Mr. McBrayer?
"A Yes, sir.
"Q And did you tell them the results of the investigation into that particular alleged confession?
"A Yes, sir.
"Q Did you inform them as to the contents that you knew at that time of the alleged confession of Mr. Ricky McBrayer?
"A I shared with them all the information that I had available pertaining to the statements that he made, that were supposed to have been a confession.
"Q All right. And do you havedid you subsequently obtain any other information in regard to that particular item?
"A We made a determination that the report made to us was without grounds. It wasn't true."
He then reaffirmed: "[Except for] the source or the person that reported to us that Mr. McBrayer had made that statement... I know that I shared the content of the statement with [defense counsel] and the fact that it had been investigated." He concluded his testimony by identifying Burns as the source of their information regarding the alleged confession and by stating that he knew Burns's identity at the time he talked with defense counsel.
As the quoted portion of defense counsel's brief articulates, they contend that Sgt. Brown's post-conviction testimony is entirely consistent with their understanding of what they were earlier informed of by him with respect to the veracity and credibility of the report of the existence of an alleged third-party confession. It was not their understanding, say defense counsel, that it was the alleged confession that was not true; rather, they understood that Sgt. Brown had concluded from his investigation that the report of the confession was rejected as untrue.
In effect, the State counters by saying that defense counsel's argument is a mere play on words and that a fair reading of Sgt. Brown's testimony "indicates that [Defendant's] attorneys were in fact informed, prior to trial, that Ricky McBrayer had confessed to another person and that the contents of this confession were determined to be untrue."
Assuming, without deciding, that Sgt. Brown's testimony is susceptible to either interpretation, I find that a resolution of this factual issue is not essential to the ultimate resolution of the fundamental due process issue here presented: Whether the trial court erred in not granting a new trial in light of the post-conviction evidence that its pre-trial discovery order had not been complied with regarding the State's information concerning a third-party confession.
I would answer the question in the affirmative and hold, on separate and independent State grounds, that Sgt. Brown's limited disclosure to defense counsel concerning McBrayer's alleged confession did not comport with the minimum standards of due process guaranteed by Constitution of Alabama 1901, Art. I, § 6.
While, as I have stated, it is not necessary to decide between the State's and the Defendant's version of Sgt. Brown's testimony (whether it was the confession or the report of the confession that was found to be untrue), I certainly agree that the equivocal nature of this entire disclosure episode serves to demonstrate the fallacy of the State's partial disclosure argument. From the early stages of the official investigation of this crime, Ricky McBrayer was listed as one of several suspects. This fact was known to defense counsel, who included his name in their discovery motion, as detailed *776 above. In spite of this, and the later disclosed fact of Burns's report of McBrayer's confession and the police investigation that ensued, the State's response to the court's discovery order made no mention of this potentially exculpatory matter.
The State would have this Court excuse its failure of disclosure on two grounds: 1) Because no record was made of Burns's report or the investigation triggered thereby, there was no record to turn over to Defendant's counsel; and 2) because, before trial, Sgt. Brown told Defendant's attorneys that McBrayer had allegedly admitted that he killed the girl, his failure to disclose the source of this information in no way restricted Defendant's "avenue of investigation."
Further, in response to the Defendant's alternative position that the State's failure to make a "full disclosure" violates the mandate of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State contends that "unless [the Defendant] could have gotten McBrayer himself to testify at trial, this information would have been useless as it would have been inadmissible at trial."
In my opinion, fundamental substantive due process mandates that we should reject each of these grounds. The very foundation of the rule requiring the State to disclose to the accused any exculpatory matters within its knowledge or possession rests upon basic notions of fairness; and the application of this rule cannot be avoided by failing to record so material a matter as the report of an alleged confession of a third party. Nor can the true spirit of the rule's application be complied with by disclosure of only some of the material information, where, as here, other material aspects of the information are withheld. The requirements of due process are not met by the exercise of speculation as to whether disclosure of less than the whole of material matters adequately furnished Defendant "an avenue of investigation." By the same token, the due process test is not measured by whether the undisclosed matter is admissible evidence. For a discussion of the "materiality" requisite and its application, see Ex parte Kimberly, 463 So.2d 1109 (Ala.1984). Piecemeal disclosure of vital information, on a pick and choose basis, cannot be left to the discretion of the State. Indeed, the trial court's discovery order did not so provide.
To be sure, the failure of the investigating officers to record so important a piece of information as a purported third-party confession lies at the very heart of the problem. Particularly is this true where, as here, the Defendant's conviction is based solely upon circumstantial evidence. If a proper record had been made and kept of the reported confession, such a report, of necessity, would have revealed, at the very least, the source of the report, its substance, and the nature and extent of any follow-up investigation. Then, its disclosure by the State, pursuant to the trial court's discovery order, would have rendered moot any post-conviction proceeding raising the instant disclosure issue.
For the foregoing reasons, I cannot accept, as an excuse for its failure to make full disclosure, the State's response to the effect that "because it kept no record of the report of a third-party confession, it was not in default of the court's discovery order." Furthermore, "disclosure," in this context, means full disclosure of all material matters within the knowledge or possession of the State. Indeed, under the totality of these circumstances, I cannot conclude, as a matter of law, that the source of the report of McBrayer's confession is any less material, for investigative and other material purposes, in the preparation of a defense, than the report itself.
For an excellent discussion of the duty of a private attorney/investigator in aid of prosecution to disclose all material information, see State v. Von Bulow, 475 A.2d 995 (R.I.1984), cert. den., 469 U.S. 875, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984). Having resolved the attorney/client privilege contention adversely to the State, the Rhode Island Supreme Court addressed the full disclosure issue thusly:

*777 "The facts of the present case are a classic example of the impermissible selective use of privileged information. While maintaining that communications were intended to be confidential, Alex and his attorney, at Alex's direction, disclosed information sufficient to trigger an investigation by the state and an indictment. These same parties later refused to disclose other evidence of the same communications. The inequity of allowing the privilege holder in this case to disclose as much as he pleased while withholding the remainder is heightened by the fact that defendant was on trial for attempted murder. The effect of excluding such evidence was therefore to deny defendant access to information that he was entitled to examine in the preparation of his defense." 475 A.2d at 1007.
Although this quoted language is in a context not here applicable (the claim of attorney/client privilege), its basic rationale, refuting the State's partial disclosure position, is equally applicable to the case at bar. For another partial disclosure case, although again in a different context, see, also, State v. Towns, 432 A.2d 688 (R.I. 1981).
Thus, because I would hold that the constitutional due process violation prevented a fair trial, in my opinion the judgment of conviction and sentence should be reversed and this cause should be remanded to the Court of Criminal Appeals for an appropriate order remanding the cause to the circuit court for a new trial.
ALMON, BEATTY and HOUSTON, JJ., concur.
NOTES
[*] Although Maddox, J., did not sit in oral arguments, he has listened to the tape of oral arguments and studied the briefs.