[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 363 
The appellant, Ignacio Jose Chevere, was convicted of trafficking in cocaine and was sentenced to 30 years in prison.
The state's evidence tended to show that on September 15, 1987, Officer Mary Gay of the Montgomery Police Department and her partner, Officer Greg Barnett set up surveillance of the residence of David Clark based on a tip from a confidential informant. The informant told the officers that David Clark was to receive a large quantity of contraband drugs. An automobile with a Florida license tag, driven by a Cuban nicknamed "Nacho," would go to the Clark's residence, the informant said, bringing the narcotics.
At approximately 11:00 p.m. on the evening of September 15, 1987, Officer Gay saw a car matching the description given by the informant in front of Clark's residence. Gay and her partner radioed for other police officers to watch the house so that they could obtain a search warrant for the premises. In the meantime, the appellant had driven away in his vehicle and was stopped several miles from Clark's residence.
When Officer Gay returned, she and her partner went to the door and knocked. They then informed David Clark that they had a search warrant. Clark thereupon took them to a bedroom where he opened his dresser drawer and showed them that he had approximately two ounces of cocaine and a quantity of marijuana therein.
The search of the appellant's vehicle uncovered a loaded .38 caliber revolver that was found in the back floorboard of the vehicle. The appellant also had $1,190 in cash on his person. The appellant was arrested on the evening of September 15, 1987, for a weapons violation.
There was further evidence that the appellant was staying at a Holiday Inn motel with another individual, Robert Case, who drove with him from Lake Wales, Florida. Case testified that during the night of September 15, 1987, he was asleep in his motel room when police entered the room to search the area. As a result of the search, marijuana was recovered, which Case said was not his. Case did say that he and the appellant before leaving Florida did "do some cocaine." However, Case did not know how much cocaine the appellant had in his possession.
Telephone records from the Holiday Inn where Chevere stayed showed that the Clark's residence was called at 10:44 p.m. from the room registered in the appellant's name. Case testified that he made no telephone calls from the motel room.
The record does not reflect that David Clark was arrested or that any charges were made against him at this time. Neither does the record reflect any arrest or any charges filed against the appellant at this time for the trafficking offense. The appellant was originally arrested for possession of a pistol on the evening of the discovery of the marijuana and cocaine. This charge was ultimately dropped and the appellant was charged with possession of the marijuana found in his motel room. He was indicted for possession of marijuana in 1987 but the charge was subsequently nol-prossed in November 1987. No further charges relating to the events which occurred on September 15, 1987, were brought against the appellant and Clark until they were both indicted for trafficking in cocaine in August 1990.
Clark was a witness for the prosecution at the appellant's trial. He testified that he had bought the cocaine on the evening of September 15, 1987, from the appellant. He said that he had paid the appellant between $1,000 and $1,400 for the cocaine and that he had spoken to the appellant on the telephone before the appellant came to his house to deliver the drugs. Clark further *Page 364 
testified that in return for his testimony in this case, he would not be charged with trafficking in cocaine but would plead guilty to the lesser included offense of possession of cocaine. He also testified that his deal with the authorities included the provision that his wife, Diane Clark, would not be charged with trafficking in the cocaine.
The defense called former police officer Barnett to testify in the appellant's behalf at trial. Barnett's testimony conformed to that of his former partner Officer Gay. Barnett was also cross-examined about his being forced to resign from the police department in 1990 after an internal investigation revealed that he and several of his co-workers took money intended to be used for informants and the purchase of drugs during sting operations. See Bertarelli v. State,585 So.2d 212 (Ala.Cr.App. 1991).
A suppression hearing to dismiss the indictment and suppress the items recovered from the appellant's vehicle was held prior to trial. The appellant maintained at the suppression hearing that the indictment should be dismissed because he was not indicted for the offense until three years after it had occurred. At the suppression hearing Montgomery Mayor Emory Folmar; Chief of the Montgomery Police Department John Wilson; and local attorney George Azar, testified.
Mayor Folmar testified that at the time of the offense in 1987, he was in charge of the police department. He had received a call from George Azar, who stated that his nephew, David Clark, had made a deal with the arresting officer and had satisfied his part of the deal but that the police were still harassing him. Mayor Folmar stated that as a result of his conversation with Azar he called Police Chief Wilson and asked if he would cheek into this matter and see if any agreement that Clark had with the police had been violated. Folmar further stated that he did not follow up with Chief Wilson about what had happened.
Chief Wilson stated that in 1987, Mayor Folmar did call and ask him to check into Clark's deal with the police. He also asserted that he did not know that Azar and Clark were related. Chief Wilson, as a result of the conversation with the Mayor, called Captain Bodine, who told him that it was his understanding that Clark had not satisfied his part of the agreement with the police and that the police should proceed with formal charges against him. There appeared to have been a misunderstanding about just what Clark was supposed to do for the police in exchange for a plea to a lesser charge. Chief Wilson told Captain Bodine not to pursue the case until the "confusion" could be resolved.
In April 1990, Chief Wilson brought the Clark and Chevere case to the attention of the district attorney's office. The case was later submitted to the grand jury and Clark and the appellant were indicted in August 1990. Clark did not go to trial as a result of a plea to the lesser charge of possession of cocaine. The appellant was tried in August 1990 for trafficking in cocaine.
 I
The appellant contends that there was insufficient evidence to find him guilty of the charged offense. A person is guilty of trafficking in cocaine if he violates § 13A-12-231, Code of Alabama 1975.[1] This section state, in pertinent part:
 "(2) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine . . . is guilty of a felony, which felony shall be known as 'trafficking in cocaine.' "
Under the above statute, a defendant may be found guilty of trafficking in cocaine if he is not in "actual" possession of the controlled substance at the time of arrest. Mathis v.State, 594 So.2d 690 (Ala.Cr.App. 1991). An individual may be *Page 365 
convicted of trafficking in cocaine if he participated in the sale, such as acting as an agent for the procurer and the buyer. Haywood v. State, 562 So.2d 297
(Ala.Cr.App. 1990). An individual may also be guilty of trafficking in cocaine if he manufactured, delivered, or brought into the state, 28 grams or more of any mixture containing cocaine. § 13A-12-231, Code of Alabama.
The court must view the evidence in the light most favorable to the state. Colvette v. State, 568 So.2d 319
(Ala.Cr.App. 1991). The facts as stated above established sufficient evidence to present the case to the jury for its determination.
The appellant also argues that there was insufficient evidence of his guilt without the testimony of David Clark, who was his accomplice. There is no question in this case that Clark was the appellant's accomplice. In fact, he was charged with the same offense.
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Section 12-21-222, Code of Alabama 1975. (Emphasis added.)
 " 'The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a "subtraction process." The test is generally stated:
 " ' "First, the evidence of the accomplice must be eliminated, and then, if up(m examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration." '
 "McCoy v. State, 397 So.2d [577] at 585 [(Ala.Cr.App.), cert. denied, 397 So.2d 589
(Ala. 1981)] (citations omitted, emphasis in original).
 " '[C]orroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone.'
 "Mills v. State, 408 So.2d [187] at 191 [(Ala.Cr.App. 1981)].
 " 'The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, § 746."
Colvette, 568 So.2d at 321-22, quoting Moore v.State, 30 Ala. App. 304, 307, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942).
"Corroborate" is defined as to "strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." Black's Law Dictionary 344 (6th ed. 1990). The evidence presented in corroboration does not have to be enough standing alone to result in a conviction. The corroborating evidence need not be "strong." Andrews v.State, 370 So.2d 320, 322 (Ala.Cr.App.), cert. denied,370 So.2d 323 (Ala. 1979). See also Reed v. State,407 So.2d 153 (Ala.Cr.App. 1980), rev'd on other grounds,407 So.2d 162 (Ala. 1981).
Section 12-21-222, "[d]oes not require corroborative testimony as to material elements of the crime. . . ." Exparte Bell, 475 So.2d 609, 613 (Ala.), cert. denied,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), but, the corroborative evidence must "tend to connect the defendant with the commission of the crime." § 12-21-222, Code of Alabama 1975. "The corroboration of an accomplice may be shown by circumstantial evidence." Kuenzel v. State,577 So.2d 474, 515 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), cert. denied, *Page 366 
___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
 " 'The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. . . .
 " 'In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration.' "
Glasco v. State, 513 So.2d 54, 57 (Ala.Cr.App.), cert. denied, 513 So.2d 61 (Ala. 1987), quoting Ware v.State, 409 So.2d 886 (Ala.Cr.App. 1981), writ quashed,409 So.2d 893 (Ala. 1982). (Emphasis supplied.) (Citations omitted.) The accused's proximity to the crime is a relevant consideration when determining whether sufficient corroboration of the accomplice's testimony exists. Andrews, supra. However, the accused is proximity itself, in most cases, is not enough evidence for corroboration. "If, however, the accused is in close proximity to the crime and there is other evidence indicating guilt, such a combination of evidence is sufficient to corroborate the testimony of an accomplice." C. Gamble,McElroy's Alabama Evidence § 300.01(14) (4th ed. 1991).
The evidence that corroborated Clark's testimony was as follows: Officer Gay testified that as a result of the surveillance of Clark's house based on a tip from a confidential informant, a car registered to the appellant with a Dade County, Florida, license plate was seen outside Clark's house on September 15, 1987. This corresponded with the information that the confidential informant had given to police. The appellant was found with a loaded gun in his car and $1,190 in cash on his person. Robert Case stated that he and the appellant had driven from Florida together and had shared a motel room. Case further testified that the marijuana recovered from the motel room was not his and that he had not made any telephone calls from the room. Case also stated that he and the appellant snorted some cocaine before leaving Florida. The telephone records from the motel that the appellant stayed at in Montgomery showed that a telephone call was placed to Clark's residence from the appellant's room. This was sufficient corroborative evidence to present the case to the jury.
 II
The appellant Chevere next argues that because the crime occurred in 1987 and the trial was not held until 1991 he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution.
The right to a speedy trial attaches when a warrant of arrest has been issued, because that is when prosecution against the accused is "commenced." Vincent v. State,607 So.2d 1290 (Ala.Cr.App. 1992); Manning v. State, [Ms. 91-737, July 24, 1992], 1992 WL 172198 (Ala.Cr.App. 1992); Steeleyv. City of Gadsden, 533 So.2d 671 (Ala.Cr.App. 1988). "A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender." § 15-3-7, Code of Alabama 1975. In this case, the prosecution was commenced not in 1987, but in August 1990 when the appellant was indicted and arrested for trafficking in cocaine.
For purposes of determining whether he was denied his right to a speedy trial, the appellant contends in his brief to this court that the delay started in September 1987, because that is when he was arrested. The record shows that the appellant was arrested for a weapons violation on September 15, 1987. This arrest ultimately led to an indictment for possession of marijuana that was found in his motel room. The possession of marijuana charge was nol-prossed in November 1987. The appellant was not charged with trafficking in a controlled substance, i.e., the cocaine recovered from Clark's residence, until August 1990, when he was formally indicted and arrested.
As this court stated in Steeley: *Page 367 
 " 'Prearrest delay may give rise to a due process claim, but only delay following formal accusation or delay subsequent to arrest are considered in evaluating a claim under the U.S. Sixth Amendment speedy trial clause. . . .'
 " 'The protection of the Sixth Amendment is triggered when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, [459] 30 L.Ed.2d 468 (1971). "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." Id., at 320, 92 S.Ct. at 463.' "
Steeley, 533 So.2d at 678, quoting Hayes v.State, 487 So.2d 987, 991 (Ala.Cr.App. 1986). (Emphasis added.)
Any time before formal charges were lodged against the appellant for trafficking in cocaine does not count when determining the length of the delay for purposes of one's constitutional right to a speedy trial. Nor does the appellant's arrest for another crime start the time ticking for purposes of any subsequent arrest for an unrelated offense.
For purposes of the appellant's right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, the prosecution began August 1990. The appellant was tried in August 1991. This is a delay of one year. The appellant does not question this delay. On appeal, his only contention concerns the time between the offense and the time that he was indicted, the period between 1987 and 1990. The only delay here was when defense counsel asked for a continuance. The speedy trial requirements of Barker v.Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), were not violated here.
The appellant did not argue at trial or in his brief on appeal that his due process rights were violated because he was not indicted until approximately three years after the offense.[2] At the hearing to dismiss the indictments based on the violation of the appellant's right to a speedy trial, Montgomery Mayor Emory Folmar; Chief of the Montgomery Police Department John Wilson; and local attorney George Azar, testified. After hearing their testimony, the trial court stated that there was no evidence of any bad faith on the part of the police or the district attorney's office in not bringing formal charges until 1990 on the trafficking offense and in nolprossing the possession charge. The trial court's ruling in this regard is supported by the evidence presented at the hearing. We will accord the trial court's ruling great deference on appeal. Jackson v. State, 589 So.2d 781
(Ala.Cr.App. 1991)
 III
The appellant next contends that the trial court erred in denying his motion to suppress the evidence found in his car and his motel room. Specifically, the appellant argues that the handgun found in his car should have been suppressed because the search was done without a warrant and without probable cause.
A confidential informant who testified at an in camera hearing concerning the motion to suppress stated that he told Officers Barnett and Gay that he had seen a white powdery substance in the Clark's residence within the last 72 hours. He also told police that he had observed a larger quantity of cocaine some weeks prior to this occasion. The informant told Barnett that on the evening of September 15, 1987, a Cuban nicknamed "Nacho" driving a car with a Dade County, Florida, license plate would deliver a large quantity of cocaine to Clark's residence. This information was obtained while the informant was in the Clark's home. He overheard Clark, while he was on the telephone, arranging a delivery. *Page 368 
This informant further stated that he had known Barnett for many years and had given him information in the past, which, to his knowledge, had resulted in one arrest and conviction.
At the suppression hearing, Barnett testified that the informant had worked with him many times in the past and had supplied information for him on many occasions. Pursuant to this information, Barnett and Gay conducted a spot surveillance on the Clark's residence. During the evening of September 15, they saw a car with a Dade County, Florida, license tag parked outside of the residence. They called the informant to confirm this information and called for back-up so that they could obtain a search warrant for Clark's residence.
Officers Tom Azar and Mike Jones were watching the house and saw the appellant leave the premises. They followed the appellant for several miles and stopped his vehicle. Azar and Jones were told that the driver would be Hispanic. After stopping the vehicle Azar gave the car a cursory search and found a metal box which contained plastic bags filled with a white substance, which was later determined not to be cocaine.
Azar testified that because the lighting was very poor on the road where the appellant was stopped, they took the car back to police headquarters. Azar, while looking into the car at police headquarters, saw a handgun in the back floorboard.
Warrantless searches are per se unreasonable. Kinard v.State, 495 So.2d 705 (Ala.Cr.App. 1986). However, there are several exceptions to the warrant requirement. They are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485,488 (Ala. 1985). Another exception which has come to be highly recognized is the automobile exception to the warrant requirement. California v. Carney, 471 U.S. 386,105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).
 " 'One of the recognized exceptions [to the warrant requirement] is the automobile or vehicle exception. First set forth by the United States Supreme Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the rationale behind this exception was discussed at length in California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985):
 " '[A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. [South Dakota v. Opperman, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)]. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Ibid.'
". . . .
 "After California v. Carney, several courts have indicated that probable cause is the linchpin of the automobile exception and that a vehicle's potential for mobility raises the presumption of exigent circumstances."
Mewbourn v. State, 570 So.2d 805, 807-810
(Ala.Cr.App. 1990).
Thus, our main inquiry is whether there was probable cause to conduct a warrantless search of the appellant's vehicle. Whether probable exists is determined by the facts of each case. Davis v. State, 507 So.2d 1023
(Ala.Cr.App. 1986). "Probable cause is concerned with 'probabilities,' that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' "Carter v. State, 435 So.2d 137, 139 (Ala.Cr.App. 1982), quoting Brinegar v. United States, 338 U.S. 160, 175,69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).
The standard used to analyze the sufficiency of probable cause based on information supplied by an informant is the "totality-of-the-circumstances" test. Illinois v. *Page 369 Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983).
 " '[A]n informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report' and are 'relevant considerations in the totality-of-the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.' "
Bishop v. State, 518 So.2d 829, 831 (Ala.Cr.App. 1987), quoting Gates, 462 U.S. at 233, 103 S.Ct. at 2329.
In this case, the police corroborated the information supplied by the informant. Initially, they verified that the house was owned by Clark. They set up a surveillance on the house and saw a car with a Dade County, Florida, license plate when the informant said the car would be there. Corroboration "lessens the likelihood that the information is false."Williams v. State, 530 So.2d 881, 883
(Ala.Cr.App. 1988). Here, the reliability of the informant's information was tested. The officers had sufficient probable cause to believe that a crime had been committed.
The appellant raises many other points about the credibility of the evidence presented at the suppression hearing. As this court has stated, " 'weight and credibility to be attached to the testimony of witnesses at a suppression hearing is a question for the trial judge.' Kitchens v. State,445 So.2d 1000, 1002 (Ala.Cr.App. 1984)." Jackson, 589 So.2d at 784. The trial court's ruling is supported by the record. The handgun seized from the appellant's car was correctly received into evidence at trial.
The appellant also contends that the trial court erred in allowing the controlled substance found in the search of his motel room to be received into evidence. However, this issue was not preserved for appellate review. The record reflects that the trial court did not rule on the admissibility of the evidence seized from the appellant's motel room at the suppression hearing. Defense counsel filed a motion seeking to limit the introduction of any evidence recovered from the appellant's motel room. At this time the prosecution stated that it had no intention of introducing any items recovered from the search of the motel room. Furthermore, when discussion during the trial centered on the search of the appellant's motel room, defense counsel stipulated to the fact that marijuana had been found in Chevere's room. There is no adverse ruling for the appellant to appeal from here. Walker v.State, 416 So.2d 1083, 1097 (Ala.Cr.App. 1982).
 IV
Last, the appellant contends that the trial court erred in sentencing him to 30 years in prison. The appellant maintains that this sentence was too harsh. However, the record reflects that this issue was not preserved for our consideration. At no time during the sentencing hearing or in any post-trial motion is there any indication that the appellant was dissatisfied with the sentence he received. We cannot consider matters on appeal that have not first been presented to the trial court for its determination. Johnson v. State,479 So.2d 1377 (Ala.Cr.App. 1985).
For the foregoing reasons the judgment in this case is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] At the time of the offense in question, the offense of trafficking in cocaine was detailed in § 20-2-80, Code of Alabama 1975. This section was transferred to § 13A-12-231, Code of Alabama 1975, in 1988.
[2] There is no statute of limitations for trafficking in cocaine. § 15-3-5, Code of Alabama 1975.