910 So.2d 158 (2005)
Juan URIOSO
v.
STATE of Alabama.
CR-03-1697.
Court of Criminal Appeals of Alabama.
March 18, 2005.
Stephanie Bain, Pell City, for appellant.
Troy King, atty. gen., and Elizabeth Ray Butler, asst. atty. gen., for appellee.
WISE, Judge.
The appellant, Juan Urioso, pleaded guilty to trafficking in amphetamines, a violation of § 13A-12-231(10), Ala.Code 1975. The trial court sentenced Urioso to 15 years' imprisonment; however, the court suspended that sentence and ordered him to serve 3 years' imprisonment, followed by 3 years of supervised probation. Urioso was also ordered to pay a fine of $50,000, as well as all assessments mandated by statute. This appeal followed.
Before pleading guilty, Urioso reserved one issue for appellate review: whether the trial court erred in denying his motion to suppress the amphetamines seized during what he contends was an illegal warrantless search. Specifically, Urioso, contends that his limited understanding of the English language prevented him from voluntarily consenting to a search of his vehicle.
In Maples v. State, 758 So.2d 1, 41 (Ala. Crim.App.), aff'd, Ex parte Maples, 758 So.2d 81 (Ala.1999), this Court stated:
"`"`In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility *159 choices supportive of the decision of the trial court.'" Kennedy v. State, 640 So.2d 22, 26 (Ala.Cr.App.1993), quoting Bradley v. State, 494 So.2d 750, 761 (Ala.Cr.App.1985), aff'd, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). A trial court's ruling on a motion to suppress will not be disturbed unless it is "palpably contrary to the great weight of the evidence." Parker v. State, 587 So.2d 1072, 1088 (Ala.Cr.App.1991).'
"Rutledge v. State, 680 So.2d 997, 1002 (Ala.Cr.App.1996)."
In Baird v. State, 849 So.2d 223, 229-230 (Ala.Crim.App.2002), we noted:
"`"`This court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App.1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985); Chevere, supra, 607 So.2d at 368.'"

"`State v. Mitchell, 722 So.2d 814[, 820] (Ala.Cr.App.1998), quoting Rokitski v. State, 715 So.2d 859[, 861] (Ala. Cr.App.1997).'"
(Quoting State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).)
In Foldi v. State, 861 So.2d 414 (Ala. Crim.App.2002), this Court discussed the consent exception to the warrant requirement, noting:
"One of the exceptions to the rule that a warrantless search is per se unreasonable is a search conducted with the consent of the owner. Rokitski v. State, 715 So.2d 859 (Ala.Crim.App.1997); Chevere v. State, 607 So.2d 361 (Ala. Crim.App.1992). The burden lies with the State to show that the search falls within an exception to the warrant requirement. Rokitski v. State, 715 So.2d at 861. Whether the defendant's consent to search was voluntary is a question of fact for the trial court to determine, based upon the totality of the circumstances. Id. See also Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, `[n]o particular factor should be given undue weight in determining the issue of voluntariness.' Rokitski v. State, 715 So.2d at 861. The fact that the defendant was in police custody or that the officers made a showing of force does not, of itself, negate a finding of voluntariness. Id. at 861-62. See also United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); Hollander v. State, 418 So.2d 970 (Ala.Crim. App.1982). However, although not dispositive of the question of voluntariness, the fact that a defendant had been advised of his Miranda rights and of his right to refuse the request to search are significant factors in determining whether the consent was voluntary. Bradley v. State, 494 So.2d [750] at 761 [(Ala. Crim.App.1985)]; 3 Wayne R. LaFave, Search and Seizure § 8.2(i) and (j), 689-90, 692 (3d ed.1996)."
861 So.2d at 422.
The evidence presented at the suppression hearing reveals the following. On November 4, 2003, at approximately 1:53 a.m., Officer Richard Woods and Reserve Officer Joe Nelson of the Riverside Police Department were patrolling the westbound lanes of Interstate 20 in St. Clair County when they stopped a vehicle being driven by Urioso because it had an inoperable tag *160 light. Officer Woods approached the vehicle, a 2001 Chevrolet Malibu automobile, and asked Urioso where he was going. Officer Woods admitted that he had to repeat his question to Urioso five or six times before Urioso responded. Officer Woods further questioned Urioso on his age, weight, and date of birth, but was unable to obtain any of this information from Urioso at the scene. Although Officer Woods testified that he believed Urioso understood his questions, a review of the videotape of the traffic stop casts doubt on whether Urioso was able to understand or comprehend Officer Woods's questions and comments.[1]
Officer Woods directed Urioso to get out of his vehicle. Officer Woods attempted to explain that he was issuing Urioso a warning ticket for an inoperable tag light, and he instructed Urioso to sign the ticket. Officer Woods then asked Urioso if he had anything illegal in his vehicle. Urioso responded "no" when asked if he had any guns, drugs, or large quantities of cash in the vehicle.[2] Officer Woods testified that despite Urioso's denial, his suspicions were raised based on Urioso's demeanorhe appeared nervous, he was sweating, and he would not make eye contact with Officer Woods. Officer Woods then asked Urioso if he could search his vehicle, again repeating the question five or six times before concluding with the question, "Do you mind if we search it ... ?" At this point, Urioso crossed his hands back and forth and again stated "no." Taking Urioso's response as a consent to search the vehicle, Officer Woods began his search at 2:08 a.m. The audio portion of the videotape was switched off at 2:13 a.m., but was switched back on at 2:15 a.m., when Officer Woods questioned Urioso about items in his trunk.[3] Urioso responded to Officer Woods's questions in Spanish. The audio portion of the videotape was switched off again at 2:17 a.m. However, Officer Nelson can be seen performing a "patdown" search for weapons on Urioso while Officer Woods continued to search the vehicle. At 2:35 a.m. Officer Nelson ordered Urioso to move from where he was standing and positioned him directly in front of the officers' vehicle. The videotape continued recording the search; however, Urioso's position blocked the camera from recording the officers' search of the vehicle.
At 2:43 a.m., approximately 30 minutes into the search, a drug-sniffing dog was brought to the scene. Officer Woods escorted the dog to a specific portion of the vehicle out of Urioso's view. At 2:44 a.m. Officer Woods approached Urioso and began to speak to him. The audio portion of the videotape was turned off for the first 10-15 seconds of the conversation. However, when the audio was turned back on, Officer Woods is heard telling Urioso that he and the dog had found drugs in his vehicle. Officer Woods testified that after the dog indicated the presence of drugs, he noticed soft automotive body filler or putty and fresh spray paint under the windshield wipers. After drilling a hole into the area around the filled area, Officer Woods discovered 13 packages of amphetamines.
*161 Officer Woods next asked Urioso if he wanted him "to tear his car apart." Officer Woods then expressed doubts that Urioso could not understand his questions and then told Urioso not to lie. Urioso then stated, "no comprende," to which Officer Woods responded, "that's good enough." At 2:46 a.m., the audio was turned off and Officer Woods resumed his search. At 3:02 a.m., Officer Woods approached Urioso with some papers and had him sign them. There is no audio during this portion of the videotape. Officer Nelson then ordered Urioso to sit on the ground. In this position, Urioso no longer blocked the camera from recording the officers' search of the vehicle. At 3:33 a.m., Urioso was handcuffed and told to sit back down on the ground. At 3:57 a.m., Officer Woods asked Urioso three times if the drugs were cocaine or heroin. Again, Urioso responded to Officer Woods's comments and questions in Spanish. Officer Woods expressed skepticism regarding Urioso's seeming lack of comprehension of English. At 4:00 a.m. Urioso was taken out of the view of the camera; at 4:03 a.m. his vehicle was removed from the scene.[4]
After a traffic stop that lasted slightly over two hours, Urioso was taken to the St. Clair County Sheriff's Department in Pell City where he was charged with trafficking in methamphetamines.[5] At no point during the traffic stop was Urioso read his Miranda[6] rights, in either English or Spanish, and he was not informed of his right to refuse Officer Woods's request to search his vehicle. See Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985); 3 Wayne R. LaFave, Search and Seizure § 8.2(i) and (j), 689-90, 692 (3d ed.1996).
Officer Woods testified that he was not able to obtain any information from Urioso at the scene; it was not until an interpreter was later brought to the sheriff's department that he was able to ascertain any information from Urioso. Officer Woods also testified that the only consent to search he obtained from Urioso at the scene was oral. Additionally, the written consent-to-search form was not presented to Urioso until after he was transported to the sheriff's department. Officer Woods stated that because he did not speak or read Spanish, he had no idea what the consent form actually stated. Moreover, Officer Woods acknowledged that the consent form contained the wrong name, the wrong information about the vehicle, and the wrong date; however, he explained that this mix-up was caused when he mistakenly switched the forms of two Spanish-speaking suspects. Finally, Officer Woods testified that at no point in this traffic stop did he tell Urioso that he was free to leave after he was cited for the traffic violation nor did he tell him that he was under arrest.
*162 We have carefully reviewed the videotape. The videotape indicates that Officer Woods had great difficulty communicating with Urioso. It is readily apparent from the videotape that Urioso spoke little, if any, English and that Officer Woods spoke just as little Spanish. Therefore, voluntary consent was clearly not given by Urioso to search his vehicle. When confronted with similar situations, other jurisdictions have ruled that consent was not freely given. Montanez v. State, 143 S.W.3d 344 (Tex.Crim.App.2004) (evidence was insufficient to support the trial court's finding that the defendant, who spoke limited English, freely and voluntarily consented to a search of his vehicle despite an apparent consent to search; a videotape showed that police investigator had great difficulty in communicating with both the defendant and his passenger); Padron v. State, 254 Ga.App. 265, 562 S.E.2d 244 (2002) (the State failed to establish that the defendant understood officer's request to search vehicle); Restrepo v. State, 438 So.2d 76 (Fla. Dist.Ct.App.1983) (the State failed to show by clear and convincing evidence that defendant freely and voluntarily consented to search).
Having carefully considered the record in this caseas well as cases of a similar nature in other jurisdictionswe conclude, after considering the totality of the circumstances surrounding Urioso's stop and alleged consent to search, that the trial court's denial of Urioso's motion to suppress is palpably contrary to the great weight of the evidence. Urioso plainly did not understand enough English to give a knowing and voluntary consent to search his vehicle. Thus, Officer Woods should have radioed for a law-enforcement officer fluent in Spanish in order to ensure that Urioso understood what he was being asked to do.[7]
Based on the foregoing, the judgment of the trial court is reversed and the cause remanded to the St. Clair Circuit Court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, J., concur.
BASCHAB and SHAW, JJ., dissent, each with opinion.
BASCHAB, Judge, dissenting.
For the reasons set forth in my dissent in Smith v. State, 884 So.2d 3 (Ala.Crim. App.2003), I respectfully dissent.
SHAW, Judge, dissenting.
After reviewing the record, specifically, Officer Woods's testimony and the videotape, I cannot agree with the majority's conclusion that the trial court erred in denying Urioso's motion to suppress. I would not interfere with the trial court's finding that Urioso knowingly and voluntarily consented to the search of the vehicle.
Therefore, I must respectfully dissent.
NOTES
[1] We further note that contrary to Officer Woods's testimony, the audio on the videotape is audible only when Officer Woods is speaking with Urioso. No conversation between Officer Woods and Officer Nelson or any of the other law-enforcement officers who later arrived at the scene was audible.
[2] In asking this question, Officer Woods used the words "armas" and "drogas," Spanish for "guns" and "drugs."
[3] Officer Woods explained that it was his standard practice to turn off the audio portion of the videotape during a search because of the feedback and other noise from passing traffic.
[4] By the time Urioso was taken away, there were three to five other law-enforcement officers at the scene.
[5] In Illinois v. Caballes, ___ U.S. ___, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the United States Supreme Court held that where a lawful traffic stop was not extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to such a stop, another officer's arrival at the scene while the stop was in progress and the use of narcotics-detection dog to sniff around the exterior of a motorist's vehicle did not rise to the level of cognizable infringement on motorist's Fourth Amendment rights. We note that the facts in this case differ from those in Illinois v. Caballes, in that Urioso was pulled over at 1:53 a.m., was issued a warning at 2:06 a.m., and allegedly gave his consent to search at 2:13 a.m. Thus, the search of Urioso's vehicle was well underway before the drug dog arrived on the scene and alerted officers to the presence of drugs.
[6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[7] The record reveals that Officer Woods stated that a dispatcher at the St. Clair County Sheriff's Department had the ability to question Urioso in Spanish and ask for his consent to search in Spanish. (R. 19.)