Corey Maples was convicted of two counts of capital murder for 1) the murders of Stacy Alan Terry and Barry Dewayne Robinson II, the murders having been committed pursuant to one scheme or course of conduct, Ala. Code 1975, § 13A-5-40(a)(1); and 2) the murder of Stacy Alan Terry, that murder having been committed during the course of Maples's committing a robbery, §13A-5-40(a)(2). By a vote of 10-2, the jury recommended that Maples be sentenced to death. The trial court accepted the jury's recommendation and sentenced him to death. The Court of Criminal Appeals affirmed the convictions and the sentence. See Maples v. State, 758 So.2d 1 (Ala.Crim.App. 1999), for a full discussion of the pertinent facts. We granted certiorari review pursuant to Rule 39(c), Ala.R.App.P.
Having read and considered the record, together with the briefs and the arguments of counsel, we conclude that the judgment of the Court of Criminal Appeals is due to be affirmed.
The opinion of the Court of Criminal Appeals discussed each of the issues the defendant has presented to this Court. We find it necessary to write to only one of those issues — whether the defendant is entitled to a new trial on the ground that the trial court erroneously denied him discovery of certain DNA-related evidence. (See Part I of the opinion of the Court of Criminal Appeals.)
The defendant contends that he was entitled to obtain discovery of each of the 12 items enumerated in Ex parte Perry,586 So.2d 242, 255 (Ala. 1991), but that the State provided only two of those items: 1) a copy of the report run by the laboratory *Page 83 
and issued to the State and 2) chain-of-custody documents. He argues that the State should have produced the other 10 items because, he says, he requested DNA-related evidence and, he says, the denial of the discovery prevented him from effectively rebutting the State's inculpatory DNA evidence. That DNA evidence indicated that the defendant had murdered the two victims in Mr. Terry's automobile and had killed them both pursuant to one scheme or course of conduct. The Court of Criminal Appeals held that the defendant was not entitled to the requested information because, it stated, the defendant's initial pretrial discovery requests were not specific enough to put the State on notice that he was seeking DNA-related evidence. Alternatively, the Court of Criminal Appeals held that, even if the State should have disclosed additional evidence, this fact would not require a reversal, because 1) the defendant failed to make a timely objection under Rule 16.5, Ala.R.Crim.P.; 2) the defendant confessed to killing the victims while they were sitting in Mr. Terry's automobile in the defendant's driveway; 3) the defendant's counsel was allowed to thoroughly cross-examine the State's DNA expert about the methods he had used; and 4) the results of the defendant's independent DNA analysis were entirely consistent with, and probably more accurate than, those reached by the State's expert.
The defendant's initial discovery request, which was submitted before the trial, stated in pertinent part as follows:
"I. DEFINITIONS
 "Unless the context indicates otherwise, the terms listed below are defined and used herein as follows:
". . . .
 "2. `Document' or `documents' means any writing, record or data in any form or medium, whether or not privileged, that is in the state's actual or constructive possession, custody or control. As used herein, a document is deemed to be within the state's control if the state has a right to obtain a copy of it. `Document' also includes the original of any document in whatever form or medium it may exist, and all copies of each such document bearing, on any sheet or side thereof any marks (including by way of nonlimiting example: initials, stamped indicia, or any comment or notation of any character) not a part of the original text or any reproduction thereof. Examples of documents that must be produced include, but are not limited to, working papers, preliminary, intermediate or final drafts, correspondence, transcripts, analyses, studies, reports, surveys, memoranda, charts, notes, records (of any sort) of meetings, diaries, telegrams, telexes, faxes, reports of telephone or oral conversations, desk calendars, appointment books, audio or video tape recordings, photographs, films, microfilm, microfiche, computer tapes, disks or printouts, press releases, and all other writings or recordings of every kind.
 "3. `Relating to' means discussing, describing, referring to, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, relevant to, bearing on, or pertaining to, in whole or in part.
". . . .
"II. INSTRUCTIONS
". . . .
 "4. Pursuant to Rule 16.3 of the Alabama Rules of Criminal Procedure, each request is continuing in nature and additional responsive documents that are obtained or discovered prior to the evidentiary hearing should be produced as soon as they are obtained or discovered.
". . . .
"III. DOCUMENTS TO BE PRODUCED
". . . .
"8. Materials in the District Attorney's Possession *Page 84 
 "The accused moves that this Court order the district attorneys for the Eighth Judicial District of Alabama to disclose to undersigned counsel, and permit them to inspect, copy and photograph, the following items:
". . . .
 "8. all documents relating to the conducting or results of any medical, pathological, toxicological, chemical, biochemical, criminalistic, laboratory, forensic, or scientific examinations, investigations or analyses regarding the deaths of Stacy Alan Terry and Barry Dewayne Robinson, II, including but not limited to:
 "(a) each document relating to the search of the scene of the crime;
 "(b) each document relating to the search of the trailer located at Route 3, Box 184A, Decatur, Alabama; and the search of Corey Maples;
 "(c) each document relating to any postmortem scientific or physical test(s) or experiment(s) conducted in connection with the deaths of Stacy Alan Terry and Barry Dewayne Robinson, II, including but not limited to all tests conducted by the state, including, but not limited to, the county coroner's office, the Alabama Department of Forensic Sciences, the Alabama Bureau of Investigation, the Morgan County Sheriff's Department, the Madison County Sheriff's Department, Decatur Police Department, the Huntsville Police Department, and the Trinity Police Department.
". . . .
 "10. all documents relating to Corey Maples, including:
". . . .
 "(i) all documents relating to any tests of any kind done on Corey Maples, including but not limited to any tests done on samples of Corey Maples's blood, saliva or hair. . . ."
We cannot agree with the Court of Criminal Appeals that this discovery request, although broad in scope, was not sufficiently specific to put the State on notice that the defendant was seeking DNA-related evidence. Rule 16.3, Ala.R.Crim.P., provides: "If prior to or during trial a party discovers additional evidence or decides to use additional evidence, which evidence has been subject to discovery under this rule, that party shall promptly notify the court and the opposing party of the existence of the additional evidence." The record indicates that once the State obtained the DNA report from its expert, approximately three months before the trial, the State was under a duty to promptly notify the trial court and the defendant's counsel of the existence of not only that report but also any additional evidence that fell within the other items specifically enumerated in Ex parte Perry, supra. We further disagree with the Court of Criminal Appeals' conclusion that the defendant had a duty to make additional requests for DNA-related evidence and that he waived any challenge to the admissibility of the State's DNA evidence by not objecting to the admission of that evidence prior to the hearing on the admissibility of the DNA evidence conducted after the trial had begun. The failure to object does not preclude review in a capital-murder case where the death penalty is imposed. The plain-error doctrine is applicable if we find error that caused substantial prejudice to the defendant or caused the probability of substantial prejudice, even though the defendant made no objection at the trial. See Ex parte Kennedy,472 So.2d 1106 (Ala. 1985); Rule 45A, Ala.R.App.P.
Although we disagree with the Court of Criminal Appeals in these respects, we nonetheless agree with that court that the defendant failed to demonstrate that he was substantially prejudiced or that he was probably substantially prejudiced by not having the additional DNA-related evidence available to him at the trial. The State introduced the DNA report to support its allegation that the defendant had murdered the victims in Mr. Terry's automobile while it was in the defendant's *Page 85 
driveway. The State was attempting to prove that the murders occurred close in time and in distance, in order to establish the aggravating circumstance set out in § 13A-5-40(a)(10) (that the two victims had been murdered pursuant to one scheme or course of conduct). We are persuaded beyond a reasonable doubt that the defendant was not substantially prejudiced by not having the requested information. Chapman v. California, 386 U.S. 18,24 (1967) (the standard for determining whether violation of a constitutional right is harmless is whether the reviewing court can declare a belief that it was harmless beyond a reasonable doubt). See Ex parte Hutcherson, 677 So.2d 1205 (Ala. 1996), and Ex parte Greathouse, 624 So.2d 208 (Ala. 1993). The defendant, in a lengthy videotaped confession, unequivocally stated that he had shot the two victims while they were sitting together in Mr. Terry's automobile and while the automobile was in the defendant's driveway. The defendant neither recanted his statement nor seriously challenged its admissibility on grounds of improper influence, coercion, etc., on the part of the police officers who took it. Furthermore, as the Court of Criminal Appeals noted, the results of the defendant's independent DNA analysis were consistent with the results reached by the State's expert. The fact that the two laboratories doing the tests independently reached the same results causes us to conclude that a thorough cross-examination of the State's DNA expert by the defendant's counsel would not have revealed any significant flaws in the method of testing done in the State's laboratory, even if the defendant's counsel had had the requested information.
Except as we have indicated above, we conclude that the opinion of the Court of Criminal Appeals is correct. We have carefully searched the record for any plain error; we have found no error in either the guilt phase of the trial or the sentencing phase of the trial that adversely affected the defendant's rights. Furthermore, we conclude that the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence and that the death sentence was proper under the circumstances. Ala. Code 1975, § 13A-5-53(a) and (b). The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Cook, Lyons, Brown, and Johnstone, JJ., concur.
See, J., concurs in the result. *Page 505