[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 26, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15187

_____

D. C. Docket No. 03-02399-CV-SLB-PWG

CORY R. MAPLES,

Petitioner-Appellant,

versus

RICHARD F. ALLEN,
Commissioner of the Alabama
Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 26, 2009)

Before EDMONDSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Cory Maples appeals from the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district court granted Maples a certificate of appealability ("COA") on the issue of whether Maples's ineffective-assistance claims are procedurally barred. This Court expanded the COA to include Maples's claim that the jury instructions were constitutionally deficient. After review and oral argument, we affirm.

## I. BACKGROUND

Maples was convicted of capital murder and sentenced to death for killing two companions, Stacy Alan Terry and Barry Dewayne Robinson II, after an evening of drinking, playing pool, and riding around in Terry's car. When the men arrived at Maples's house, Maples went inside and got a .22 caliber rifle. Maples then shot each man twice in the head in an execution-style killing. See Maples v. State, 758 So. 2d 1, 14-15 (Ala. Crim. App. 1999). Maples fled in Terry's car. Id. at 15-16.

Maples signed a confession, stating that he: (1) shot both victims around midnight; (2) had drunk six or seven beers by about 8 p.m., but "didn't feel very drunk"; and (3) did not know why he decided to kill the two men. Faced with this confession, Maples's trial attorneys argued that Maples was guilty of murder, but not capital murder. See id. at 19, 24. Under Alabama law, capital murder

2

involves, inter alia, (1) murder during a robbery, or (2) the murder of two persons by one act or pursuant to one scheme or course of conduct. See Ala. Code § 13A-5-40(a)(2) & (10). The trial judge instructed the jury on capital murder, robbery, and the lesser included charges of murder (a non-capital crime) and first-degree theft of property. Both the capital murder and the lesser included murder charges required that the jury find that Maples had the intention to cause the death of a person. See Ala. Code §§ 13A-5-40 (capital murder), 13A-6-2(a)(1) (murder). The jury convicted Maples of capital murder.

On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Maples's conviction and death sentence. Ex parte Maples, 758 So. 2d 81 (Ala. 1999); Maples v. State, 758 So. 2d 1 (Ala. Crim. App. 1999). On direct appeal, Maples argued that the jury instructions violated due process because the trial court failed to include, sua sponte, an instruction on the lesser included, non-capital offense of manslaughter due to voluntary intoxication.[1] This claim forms part of the basis of the current appeal.

Maples subsequently filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32, claiming, inter alia, that trial counsel was

---

[1]Maples's witnesses testified that Maples was not intoxicated that night. Maples's trial attorneys did not request a jury instruction on the offense of manslaughter due to voluntary intoxication.

3

ineffective for failing to investigate or present evidence of: (1) Maples's mental health history; (2) his intoxication at the time of the crime; and (3) his alcohol and drug history. Maples's Rule 32 petition claimed the jury instructions violated due process by not including the lesser offense of manslaughter due to voluntary intoxication. The State of Alabama moved the state trial court (what Alabama calls the circuit court) to dismiss Maples's Rule 32 petition, and that motion was denied. Seventeen months later, the trial court issued an order (the "Rule 32 Order") dismissing Maples's Rule 32 petition. The trial court dismissed some claims for failure to state a claim, and found other claims procedurally barred because they could have been raised at trial or on direct appeal but were not.

The Alabama trial court clerk sent copies of the Rule 32 Order, filed on May 22, 2003, to: (1) Maples's two attorneys (Jaasi Munanka and Clara Ingen-Housz) with the law firm of Sullivan & Cromwell in New York, who were attorneys of record and had performed all of the substantive work on Maples's Rule 32 case; and (2) Maples's local counsel (John G. Butler, Jr.) in Alabama. No one disputes that both Butler and Sullivan & Cromwell received copies of the Rule 32 Order dismissing Maples's petition.[2]

---

[2]Munanka and Ingen-Housz, both attorneys licensed by the state of New York, applied for and were granted pro hac vice status to represent Maples. See Rule VII, Rules Governing Admission to the Alabama State Bar (1994). At the time of Maples's Rule 32 proceedings, Alabama court rules required all out-of-state attorneys seeking pro hac vice status in Rule 32

Neither Maples nor any of his three attorneys filed a notice of appeal from the dismissal of Maples's Rule 32 petition within the 42 days required by Alabama Rule of Appellate Procedure 4(b)(1). Butler took no action whatsoever after receiving the Rule 32 Order. Sullivan & Cromwell received the Rule 32 Order but instead of opening the envelope that contained it, the firm returned it to the Alabama circuit court clerk.

By the time the trial court dismissed Maples's Rule 32 petition, attorneys Munanka and Ingen-Housz had left Sullivan & Cromwell. As Maples's Sullivan & Cromwell attorney acknowledged at oral argument, arrangements had been made within the firm for other attorneys at Sullivan & Cromwell to take over representation of Maples. However, none of Maples's attorneys filed anything with the Alabama trial court reflecting this change.[3]

The State's attorney (Jon Hayden) wrote Maples a letter, dated August 13, 2003, informing him that although his deadline for appealing the dismissal of his Rule 32 petition had passed, Maples still had four weeks to file a federal habeas

cases to associate local counsel who must "accept joint and several responsibility with the foreign attorney to the client, to opposing parties and counsel, and to the court . . . in all matters arising from that particular cause." Id. Here the local attorney of record was Butler.

[3]At oral argument, Maples's attorney also acknowledged that, per Sullivan & Cromwell's internal policy, the Alabama court's Rule 32 Order should have been forwarded to the Sullivan & Cromwell attorneys who had taken responsibility for Maples's case after Munanka's and Ingen-Housz's departures. But due to a clerical error in the Sullivan & Cromwell mailroom, the firm instead returned the Rule 32 Order to the trial court clerk.

petition. Hayden gave Maples the address to file a federal habeas petition and informed him how to seek new counsel if he wished.

Thereafter, Maples's mother contacted Sullivan & Cromwell. On Maples's behalf, new attorneys from the Sullivan & Cromwell firm requested that the Alabama trial court re-issue its Rule 32 Order so that he might file a timely appeal. The trial court refused, stating in an order that it was "unwilling to enter into subterfuge in order to gloss over mistakes made by counsel for [Maples]." Ex parte Maples, 885 So. 2d 845, 847 (Ala. Crim. App. 2004) (quoting trial court order).

Maples, through counsel Sullivan & Cromwell, then petitioned the Alabama Court of Criminal Appeals for a writ of mandamus directing that he be granted an out-of-time appeal. That court denied his petition, finding that the circuit court clerk had properly served Maples's attorneys of record at their listed addresses with the Rule 32 Order and the attorneys had failed to act. Thus, an out-of-time appeal was not warranted. Id. at 848-50 (noting that "the circuit clerk [in Maples's case] was not negligent in its duty to notify the parties of the resolution of the Rule 32 petition"). The Alabama Supreme Court also denied Maples's petition for a writ of mandamus requesting an out-of-time appeal of the Rule 32 dismissal. Ex parte Maples, No. 1030701 (Ala. Sept. 3, 2004) (unpublished). The United States

6

Supreme Court denied Maples's subsequent certiorari petition.

In the meantime, Maples, again through counsel Sullivan & Cromwell, had filed the federal habeas petition at issue here alleging, inter alia, the same ineffective-assistance claims asserted in his Rule 32 petition and the same jury-instruction claim asserted in his direct appeal. The district court stayed the § 2254 petition while Maples's state court petition seeking an out-of-time appeal of the Rule 32 Order was pending.

After the state appellate courts denied Maples's requests for an out-of-time appeal in his Rule 32 case, the district court denied Maples's § 2254 petition. The district court concluded that: (1) Maples's ineffective-assistance claims were procedurally defaulted because Maples did not timely file an appeal of the dismissal of his Rule 32 petition; (2) even if Maples's default were the result of his three post-conviction counsel's failing to file a Rule 32 appeal, such ineffectiveness could not establish cause for the default because there is no constitutional right to post-conviction counsel; and (3) the Alabama appellate courts' decisions that Maples was not entitled to a sua sponte jury instruction on manslaughter due to voluntary intoxication was not contrary to, or an unreasonable application of, clearly established federal law. This appeal followed.

## II. STANDARD OF REVIEW

7

"When examining a district court's denial of a § 2254 petition, we review the district court's factual findings for clear error and its legal determinations <u>de novo</u>." <u>Owen v. Sec'y for Dep't of Corr.</u>, 568 F.3d 894, 907 (11th Cir. 2009). We review <u>de novo</u> the district court's determination that a claim has been procedurally defaulted. <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1629 (2009).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, governs Maples's § 2254 petition and appeal. AEDPA "greatly circumscribes federal court review of state court decisions" and "establishes a general framework of substantial deference for reviewing every issue that the state courts have decided." <u>Owen</u>, 568 F.3d at 907 (quotation marks and citation omitted). According to § 2254, as amended by AEDPA, a federal court shall not grant a writ of habeas corpus on behalf of a state prisoner

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### III. DISCUSSION

A.     Procedural Bar

The first issue is whether Maples's ineffective-assistance-of-trial-counsel claims are procedurally barred from federal habeas review.

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999).

Maples's ineffective-assistance claims were first presented to the state trial court in Maples's Rule 32 petition. It is undisputed that Maples never appealed that court's dismissal of his Rule 32 claims. Thus, Maples did not properly exhaust those claims in state court. And because any further attempts by Maples to exhaust those claims in state court would be futile, Maples's unexhausted claims are procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S.

9

Ct. 2546, 2557 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas . . . ." (citations omitted)); O'Sullivan, 526 U.S. at 848, 119 S. Ct. at 1734 (stating that where a petitioner has not "properly presented his claims to the state courts," he will have "procedurally defaulted his claims" in federal court); McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."); Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we . . . treat those claims now barred by state law as [procedurally defaulted with] no basis for federal habeas relief.").

We know that Maples's further attempts at exhaustion would be futile

because the Alabama courts already have denied Maples's requests for an out-of-time Rule 32 appeal. So Maples has procedurally defaulted his ineffective-assistance claims for this reason. See Bailey, 172 F.3d at 1306-07 (Carnes, J., concurring) (explaining that "[w]e call the futility rule an 'exception' to the exhaustion requirement, but in reality it is just a recognition that when there is a procedural bar that would prevent a state court from granting relief on a claim, even if that claim is meritorious, there is no effective state remedy left for the petitioner to exhaust. . . . This is a procedural bar case, not an exhaustion of state remedies case.").

Maples urges this Court to overlook his procedural default, claiming the Alabama courts have not regularly enforced Alabama's time limits for appeals, although they obviously did so in Maples's case. For a state procedural ruling to preclude federal habeas review of Maples's ineffective-assistance claims, the state court's ruling must rest upon an "independent" and "adequate" state-law ground. Cone v. Bell, – U.S. –, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546 (1991)); Payne v. Allen, 539 F.3d 1297, 1313 (11th Cir. 2008), cert. denied, 129 S. Ct. 2433 (2009); Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's

11

refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Cone, 129 S. Ct. at 1780; see Lee v. Kemna, 534 U.S. 362, 376, 381, 122 S. Ct. 877, 886, 888 (2002) (recognizing that it is only a "limited" or "small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim").

Here, it is undisputed that (1) the last state court's judgment was based on a procedural bar to state review and not the merits of the claim, and (2) that state law ground was independent of the federal question. More specifically, under Alabama law, Maples had 42 days to file a notice of appeal of the Rule 32 Order but did not do so. Ala. R. App. P. 4(b)(1).[4] And the Alabama appellate court denied Maples's request for an out-of-time appeal under state law and undisputedly did not consider the merits of his Rule 32 claims.[5] See Maples, 885 So. 2d at 846-50. Thus, the

---

[4]The timely filing of a notice of appeal is a jurisdictional prerequisite in Alabama. Byrd v. Petelinski, 757 So. 2d 400, 402 (Ala. 2000) (dismissing an untimely filed appeal because "this Court's appellate jurisdiction was not invoked"); Schiffman v. City of Irondale, 669 So. 2d 136, 138 (Ala. 1995) ("The time for filing a notice of appeal is jurisdictional."). In Alabama, "[a]n appeal shall be dismissed if the notice of appeal was not timely filed . . . ." Ala. R. App. P. 2(a)(1).

[5]At the time Maples's Rule 32 petition was dismissed, the appropriate way to seek an out-of-time appeal was to petition for a writ of mandamus directing the clerk to reinstate an untimely notice of appeal or to reenter the order so an appeal would be timely. See, e.g., Ex parte Bonner, 926 So. 2d 339, 340 & n.1 (Ala. 2005); Marshall v. State, 884 So. 2d 900, 905 (Ala. 2003). Maples petitioned for a writ of mandamus.
Alabama's out-of-time appeal rule for Rule 32 appeals is now found in Alabama Rule of Criminal Procedure 32.1(f). See Ala. R. Crim. P. 32.1(f) (stating that a party may institute a successive Rule 32 proceeding if he "failed to appeal within the prescribed time" from the dismissal or denial of a previously filed Rule 32 petition "and that failure was without fault on

only question in this case is whether Alabama's procedural bar provides an "adequate" state ground for denying relief.

"[T]he adequacy of state procedural bars" is not a matter of state law, but "is itself a federal question."  Cone, 129 S. Ct. at 1780 (quotation marks omitted).  To constitute an adequate state ground, the state procedural rule "must not be applied in an arbitrary or unprecedented fashion," Judd, 250 F.3d at 1313, but must be "sufficiently firmly established and regularly followed" to warrant a procedural default, Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006) (citing Hurth v. Mitchem, 400 F.3d 857, 862-64 (11th Cir. 2005)).  In determining whether a state procedural rule is firmly established and regularly followed, courts consider whether the state has put litigants on notice of the rule and whether the state has a legitimate state interest in the rule's enforcement.  See Lee, 534 U.S. at 385-88, 122 S. Ct. at 890-92; Osborne v. Ohio, 495 U.S. 103, 123-25, 110 S. Ct. 1703-05 (1990); James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984); Douglas v. Alabama, 380 U.S. 415, 422-23, 85 S. Ct. 1074, 1078-79 (1965).  Further, while "regularly followed" means "closely hewn to," it does not mean complete unanimity or absolute consistency of state decisions applying the rule.  See Dugger v. Adams, 489 U.S. 401, 410 n.6, 109 S. Ct. 1211, 1217 n.6 (1989)

---

the petitioner's part").

13

(concluding Florida Supreme Court applied a procedural rule "consistently and regularly" because in "the vast majority of cases, . . . the Florida Supreme Court has faithfully applied its rule that claims not raised on direct appeal cannot be raised on postconviction review" and because the few cases petitioner cited are distinguishable and are not "sufficient to undercut the adequacy of the Florida procedural rule"); Johnson v. Alabama, 256 F.3d 1156, 1170 n.6 (11th Cir. 2001) (rejecting petitioner's argument that Alabama courts do not adhere to a state procedural default rule because the exceptions cited by petitioner were "not as broad" as he claimed and "do not establish that Alabama would not regularly apply its default rules in the situation we have here").

Here, the district court properly concluded that Alabama's 42-day and out-of-time appeal rules were firmly established and regularly followed by the Alabama courts and were not applied in an unprecedented or arbitrary fashion in Maples's case. Maples was on notice of the rules and the state has an undoubted legitimate state interest in its time deadlines for appeals for finality purposes. Further, Alabama courts routinely have enforced the 42-day rule and denied out-of-time appeals. See, e.g., Melson v. State, 902 So. 2d 715 (Ala. Crim. App. 2004); Shephard v. State, 598 So. 2d 39 (Ala. Crim. App. 1992); Alverson v. State, 531 So. 2d 44 (Ala. Crim. App. 1988).

Alabama has granted out-of-time appeals in only three limited circumstances: (1) prisoners proceeding pro se who were not served with copies of the relevant orders within the 42-day period;[6] (2) direct criminal appeals where the defendant requested counsel to appeal but no appeal was filed, given that a defendant has a constitutional right to counsel;[7] and (3) the trial court, acting through its clerk, assumed a duty to personally serve or notify a party who was represented by counsel in Rule 32 proceedings, but then negligently failed to do so, resulting in an out-of-time appeal.[8]  None of these three exceptions apply here.  First, Maples never filed any pleadings pro se or otherwise appeared pro se but had three counsel who were served with the Rule 32 Order.  Second, Maples's case was not a direct criminal appeal, but an appeal from a collateral Rule 32 dismissal, where Maples has no constitutional right to counsel.  Indeed, Maples does not rely on these two exceptions.

Rather, Maples relies on the third exception, arguing primarily that his case

---

[6]See, e.g., Ex parte Miles, 841 So. 2d 242, 243 (Ala. 2002); Ex parte Robinson, 865 So. 2d 1250, 1251-52 (Ala. Crim. App. 2003).

[7]See, e.g., Magwood v. State, 689 So.2d 959, 969-70 (Ala. Crim. App. 1996); see also Clayton v. State, 867 So. 2d 1150, 1151-52 (Ala. Crim. App. 2003); Seay v. State, 881 So. 2d 1065, 1066-67 (Ala. Crim. App. 2003).

[8]See, e.g., Marshall v. State, 884 So. 2d 898, 898-99 (Ala. Crim. App. 2002) ("Marshall I"), rev'd, 884 So. 2d 900, 900-01 (Ala. 2003) ("Marshall II") (collectively, "Marshall"); Ex parte Johnson, 806 So. 2d 1195, 1195-97 (Ala. 2001); Ex parte Weeks, 611 So. 2d 259, 261-62 (Ala. 1992).

is like Marshall, where the Alabama courts granted an out-of-time appeal.

However, Maples's case is wholly different from Marshall. The petitioner

Marshall filed a notice of appeal that was dismissed as untimely. Marshall I, 884

So. 2d at 898. Marshall filed a second Rule 32 petition seeking an out-of-time

appeal for his first Rule 32 petition.[9] Id. The Alabama appellate courts in Marshall

appeared to find that the state circuit court clerk assumed a duty to serve Marshall

personally in prison, even though he had counsel at some point, because Marshall

had filed "numerous pro se motions and pleadings throughout this matter" in the

circuit court and had "request[ed] information on the status of his first Rule 32

petition." Marshall I, 884 So. 2d at 899; Marshall II, 884 So. 2d at 901.[10] The out-

of-time appeal in Marshall was granted only because the "the court assumed a duty

of notification it did not otherwise owe the petitioner and then failed to perform

that duty." Marshall II, 884 So. 2d at 903 (citing Johnson, 806 So. 2d at 1197;

---

[9]In Marshall, the petitioner's counseled Rule 32 petition was denied in June 2000. Marshall I, 884 So. 2d at 898. Marshall's November 2000 notice of appeal was dismissed as untimely. Id. Marshall filed a second Rule 32 petition, claiming he personally never received notice of the denial of his first Rule 32 petition and was due an out-of-time appeal because the trial court did not send him personally a copy of the denial order in the first Rule 32 case. Id. at 898-99.

[10]Nowhere in its opinion does the Alabama court say that Marshall only began to file pro se motions after his first Rule 32 petition had been dismissed. In fact, the court's statements that Marshall made pro se filings "throughout" the proceeding, and "continued to file" pro se motions to request information on the status of his petition, suggest the opposite. Fairly read, the opinion indicates that Marshall filed pro se motions and pleadings both before and after the dismissal.

16

Weeks, 611 So. 2d at 262).[11]

The Alabama Supreme Court concluded that the remedy for breach of the clerk's duty to notify was issuance of a writ of mandamus to the clerk directing reinstatement of Marshall's untimely appeal to the docket, and not the grant of Marshall's second Rule 32 petition. Marshall II, 884 So. 2d at 904-05.[12] The Alabama Supreme Court's decision that Marshall was entitled to an out-of-time appeal expressly relied on Johnson's and Weeks's assumption-of-duty rule. Id.

In contrast to Marshall, Maples never filed any pleadings pro se but had three attorneys to whom the clerk sent notice. Maples relied exclusively on his counsel and made no attempt to deal directly with the state trial court or its clerk,

---

[11]The trial court summarily dismissed Marshall's second Rule 32 petition. Marshall I, 884 So. 2d at 898. Ultimately, the Alabama Supreme Court agreed that Marshall was entitled to an out-of-time appeal and affirmed its holdings in Johnson and Weeks that procedural due process concerns arise when a court, acting through its clerk, assumes the duty of notification it did not otherwise owe a petitioner but then negligently fails to perform that duty. Marshall II, 884 So. 2d at 901-05.

[12]The Alabama Supreme Court made clear that, at the time of Marshall's case, the writ of mandamus (directing the clerk to reinstate a dismissed untimely appeal or directing the trial court to reenter the Rule 32 Order) was the only means by which to secure an out-of-time appeal from the dismissal or denial of a Rule 32 petition. Marshall II, 884 So. 2d at 903-05. The Alabama Supreme Court added that if "this Court were to hold today that Marshall may properly request an out-of-time appeal in a Rule 32 petition, we would be, first, amending Rule 32 to provide a ground for relief that the rule does not currently provide." Id. at 904.
Both the Alabama Court of Criminal Appeals and the Alabama Supreme Court agreed that Marshall was entitled to an out-of-time appeal. The Alabama Supreme Court, however, reversed the Alabama Court of Criminal Appeals' grant of Marshall's second Rule 32 petition on the grounds that the proper remedy was a writ of mandamus, not a Rule 32 grant. Marshall I, 884 So. 2d at 898, 899 (Ala. Crim. App. 2002), rev'd, Marshall II, 884 So. 2d 900, 903-05 (Ala. 2003).

17

or to keep himself apprised directly of the developments in his case. Maples never requested the clerk to give him personal notice in addition to his counsel. There is no basis here upon which to infer that the trial court clerk was negligent or that the clerk even <u>knew</u> Maples wanted to be personally informed of the court's orders, much less that it <u>assumed a duty</u> to notify Maples personally in prison. Indeed, in Maples's case, the Alabama appellate court itself expressly distinguished <u>Marshall</u> when it denied Maples's request for an out-of-time appeal. <u>Maples</u>, 885 So. 2d at 848-50. Simply put, <u>Marshall</u> does not convince us that Alabama appellate courts ignore the state's procedural rules for appeals or fail to apply them regularly. Maples can point to no Alabama case where an out-of-time appeal has been granted in circumstances such as his case.

For all of these reasons, we conclude that it was neither arbitrary nor inconsistent for the Alabama courts to enforce its 42 day rule for appeals and deny Maples's request for an out-of-time appeal, and that Alabama's appeal rules are adequate, independent state law procedural rules barring Maples's ineffective-assistance claims from federal habeas review.

B.    <u>Cause and Prejudice to Excuse Procedural Default</u>

Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause

18

for and actual prejudice from the default; or (2) a fundamental miscarriage of justice.  See Murray v. Carrier, 477 U.S. 478, 485-86, 495-96, 106 S. Ct. 2639, 2644, 2649 (1986); Bailey, 172 F.3d at 1306.  Maples argues that, even if they are procedurally defaulted, his ineffective-assistance claims should be heard by the federal court because he has demonstrated cause for and prejudice from the default.[13]  Cause is established if "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray, 477 U.S. at 488, 106 S. Ct. at 2645.  "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel."  Mize, 532 F.3d at 1190 (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645).

Here, the factor that resulted in Maples's default – namely, counsel's failure to file a timely notice of appeal of the Rule 32 Order – cannot establish cause for his default because there is no right to post-conviction counsel.  See Coleman, 501 U.S. at 752, 111 S. Ct. at 2566 (stating that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings . . . , a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings");

_____

[13]Maples does not argue the fundamental miscarriage of justice prong.

19

Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1344 (11th Cir.), cert. denied, 128 S. Ct. 628 (2007) ("A defendant cannot base his cause and prejudice for procedural default on his attorney's performance unless the attorney's performance was constitutionally ineffective . . . [and a] petitioner cannot establish constitutionally ineffective assistance of counsel in state post-conviction proceedings because there is no constitutional right to an attorney in such proceedings." (quotation marks and citation omitted)); Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) ("[A]ny ineffectiveness of [counsel] could not be considered cause for the purposes of excusing the procedural default that occurred in . . . state collateral post-conviction [proceedings].").  Thus, Maples cannot show cause for the procedural default.[14]

C.     Waiver of the Exhaustion Requirement and Estoppel as to the Procedural Bar[15]

Maples's remaining arguments are based on a footnote in the State's brief to the Alabama Supreme Court opposing Maples's request for an out-of-time appeal of the Rule 32 Order.  In the Alabama Supreme Court, Maples's brief asserted that "Maples may very well be executed despite valid post-conviction claims merely

_____

[14]As Maples has not established cause for his default, we need not decide if his default resulted in any prejudice.

[15]Maples's brief argues waiver only as to the exhaustion requirement and estoppel only as to the procedural bar.

because he was denied the opportunity to timely appeal the dismissal of his Rule 32 Petition." A footnote in the State's response brief said that "Maples has filed a petition for [a] writ of habeas corpus in federal court . . . [and] may still present his postconviction claims to that court." Maples argues that this statement in the State's footnote (1) is a waiver of the exhaustion requirement or (2) judicially estops the State from arguing that his ineffective-assistance claims are procedurally barred.[16]

Maples's arguments fail. Section 2254(b)(3) provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); see Kelley v. Sec'y, Dep't of Corr., 377 F.3d 1317, 1351 n.33 (11th Cir. 2004) ("Where AEDPA applies, states will not be deemed to have waived the exhaustion requirement unless they indicate their intention to waive the requirement expressly."); McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("Because § 2254(b)(3) provides that the State can waive [a petitioner's] failure to properly exhaust his claim only by expressly doing so, it logically follows that the resulting procedural

---

[16]In the district court, the State listed both exhaustion and procedural bar as affirmative defenses to Maples's § 2254 petition. We are not talking about a waiver of affirmative defenses in this case.

21

bar, which arises from and is dependent upon the failure to properly exhaust, can only be waived expressly.").[17] Thus, we cannot find either waiver of exhaustion or estoppel as to the procedural bar unless the State's footnote can be considered an express waiver.

This Court has found express waivers under § 2254(b)(3) only where the State has provided an explicit statement during federal habeas proceedings that it is waiving a petitioner's procedural default. See Hills v. Washington, 441 F.3d 1374, 1376 (11th Cir. 2006) (finding waiver where Attorney General of Georgia filed two separate briefs asking the court to decide the merits of the claim and "urg[ing the court] to conclude that the petitioner's claims 'are not defaulted'"); Dorsey v. Chapman, 262 F.3d 1181, 1187 (11th Cir. 2001) ("[T]he state's explicit waiver of [the exhaustion] defense before the district court forecloses it being asserted here." (emphasis added)).

Here, the State's footnote statement to the Alabama Supreme Court is not an "express waiver." Merely observing to a state court that a petitioner may present his claims in federal habeas proceedings does not imply that the federal court

_____

[17]In McNair, this Court explained:
Section 2254(b)(3), by its own language, applies only to the exhaustion requirement. It does not mention procedural default, which, while related to exhaustion, is distinct. However, we are persuaded that § 2254(b)(3) applies with full force in cases such as this, where the procedural bar arises only as a direct result of the petitioner's failure to exhaust his state law remedies.
McNair, 416 F.3d at 1305.

22

would reach the merits of these claims. And observing that a petitioner may present his claims in federal court, without explicitly stating that the State was waiving the exhaustion requirement, cannot satisfy § 2254(b)(3)'s mandate that the State "expressly waive[] the requirement." Because the State did not expressly waive the exhaustion requirement or the procedural bar, it cannot be deemed to have waived those defenses nor can it be estopped from asserting them now.

D.    Jury-Instruction Claims

At Maples's trial, the state trial court instructed the jury on capital murder and robbery and, at Maples's attorneys' request, on the non-capital crimes of intentional murder and theft. Maples's attorneys did not request, and the trial court did not give, any instructions on manslaughter or intoxication. Maples now argues that the trial court's failure to instruct the jury sua sponte on manslaughter due to voluntary intoxication was a violation of his due process rights.[18]

Maples raised this argument on direct appeal, and the state courts rejected it. Maples, 758 So. 2d 81, 82 (Ala. 1999); Maples, 758 So. 2d 1, 23-24 (Ala. Crim.

---

[18]Because neither Maples nor his attorneys ever proposed any jury instructions regarding manslaughter and/or intoxication, it is unclear precisely what form they would have taken. The parties and the courts that have addressed this claim speak variously about a single "manslaughter due to voluntary intoxication" charge, or one charge on "manslaughter" and one on "intoxication." Whether this instruction took the form of a single charge or multiple ones does not affect the argument. We use the term "manslaughter due to voluntary intoxication charge."

23

App. 1999).[19]  The Alabama Court of Criminal Appeals concluded that a charge on

manslaughter due to voluntary intoxication was not required because: (1) although

there was evidence Maples was drinking several hours before the murders, there

was no evidence he was intoxicated at the time he committed them; (2) there was

no rational basis for convicting Maples of manslaughter due to intoxication; and

(3) the intoxication and manslaughter charge Maples argued for on appeal would

have been inconsistent with his trial attorneys' strategy, which was to show Maples

was not intoxicated at the time of the murders.  Maples v. State, 758 So. 2d at 23-

24.  The Alabama appellate court stated:

> The legislature has defined "intoxicated" to include "a disturbance of
> mental or physical capacities resulting from the introduction of any
> substance into the body."  § 13A-3-2(e)(1), Ala.Code 1975.  Thus,
> evidence of ingestion of alcohol or drugs, standing alone, is
> insufficient to support a charge on intoxication.  In addition, there
> must be evidence that the ingestion caused a disturbance of the
> person's mental or physical capacities and that that mental or physical
> disturbance existed <u>at the time the offense was committed</u>. . . .
> <u>Evidence that someone was drinking an alcoholic beverage is not
> evidence that that person was intoxicated</u>. . . .   Furthermore,
> instructions on intoxication and manslaughter are not required when
> they would be inconsistent with the defense strategy. . . . Finally,
> under § 13A-1-9(b), Ala.Code 1975, a trial court is not required to
> instruct on a lesser included offense unless there is a rational basis for

---

[19]Since the portion of the Alabama Court of Criminal Appeals' opinion addressing
Maples's jury-instruction claims was summarily affirmed by the Alabama Supreme Court,
Maples, 758 So. 2d 81, 82 (Ala. 1999), we review the decision of the Court of Criminal Appeals.
See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991) ("Where there has
been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding
that judgment or rejecting the same claim rest upon the same ground.").

24

> a verdict convicting the defendant of the included offense.
>
> The testimony at trial did not establish that the appellant was intoxicated at the time of the murders. Although there was some testimony that he had ingested alcohol several hours before the murders occurred, there was no testimony that he was intoxicated at the time of the murders. Also, there was no evidence that he had ingested drugs before the murders. Thus, there was no rational basis for instructions on intoxication and manslaughter under the evidence presented in this case.
>
> Furthermore, instructions on intoxication and manslaughter would have been inconsistent with his defense strategy. At trial, the appellant specifically contended that he was not intoxicated at the time of the murders. He also contended that, at most, he was guilty of two intentional murders, but not two counts of capital murder. Thus, the trial court did not err in not instructing the jury on intoxication and manslaughter.

Id. (quotation marks and citations omitted).

The Alabama appellate court's decision about the charge on manslaughter due to voluntary intoxication is neither contrary to, nor an unreasonable application of, established federal law. Maples relies primarily on Beck v. Alabama, 447 U.S. 625, 100 S. Ct. 2382 (1980), but Beck is completely inapposite because it involved an all-or-nothing statute no longer extant. In the 1970s, Beck was convicted of capital murder. In Beck, the Supreme Court invalidated an Alabama statute that absolutely prohibited in capital cases the charging of all non-capital lesser included offenses. Although the evidence warranted such an instruction in Beck's case, the Alabama jury was given the choice only of (1) convicting Beck of the capital offense, for which the jury must impose the death penalty, or (2) setting him free.

25

Beck, 447 U.S. at 628-30, 100 S. Ct. at 2385-86. The Supreme Court held Alabama's all-or-nothing statute was unconstitutional because the absolute preclusion in a capital case of a lesser included offense, when the evidence supported it, violated procedural due process. See Beck, 447 U.S. at 627, 100 S. Ct. at 2384 (overturning death penalty where jury "was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict"); cf. Hopper v. Evans, 456 U.S. 605, 610-14, 102 S. Ct. 2049, 2052-54 (1982) (upholding death sentence even though jury was instructed on only capital offense under Alabama's preclusion statute, because the evidence did not support a lesser included offense charge and defendant was thus not prejudiced by preclusion statute).[20]

By the time of Maples's trial, there was no such preclusion statute and Alabama law permitted the charging of lesser included non-capital offenses if the evidence supported it. The core issue in Beck – the all-or-nothing choice between death or acquittal even though the evidence actually warranted a finding of a lesser included non-capital offense – is not present here.

In addition, the Supreme Court revisited Beck in Spaziano v. Florida, 468

---

[20]In Beck, "[t]he State conceded that, on the evidence in that case, Beck would have been entitled to an instruction on the lesser included, noncapital offense of felony murder except for the preclusion clause." Hopper, 456 U.S. at 609, 102 S. Ct. at 2052 (discussing Beck).

U.S. 447, 104 S. Ct. 3154 (1984), concluding that giving the jury an all-or-nothing choice is permissible if the defendant chose not to request a lesser included offense. In Spaziano, the defendant was charged with capital murder after the statutes of limitation had run on all of his potential lesser included offenses. Id. at 450, 104 S. Ct. at 3156. The trial court gave Spaziano the choice of either waiving the statutes of limitation to receive the lesser included offense instructions, or not waiving the statutes of limitation and facing the jury's all-or-nothing choice. Id. at 450, 104 S. Ct. at 3157. Spaziano chose the latter, was convicted of capital murder, and appealed. Id. at 450-52, 104 S. Ct. at 3157-58. The Supreme Court rejected Spaziano's argument that the jury's all-or-nothing choice between capital murder and acquittal violated Beck because Spaziano "was given a choice" whether to accept lesser included offense charges or not and he "knowingly chose not to do so." Id. at 457, 104 S. Ct. at 3160. In other words, there was no due process issue because Spaziano (and his attorneys) had the option of obtaining a lesser included offense instruction, even though no such instruction was given. Thus, if the state law permits consideration of a lesser included non-capital offense and the attorneys do not request a charge on that offense, there is no Beck issue at all. Id. at 456, 104 S. Ct. at 3160 (stating, "there may well be cases in which the defendant will be confident enough that the State has not proved capital murder

27

that he will want to take his chances with the jury"). Certainly the Supreme Court has never stated, or even implied, that a state trial court must sua sponte instruct the jury on a lesser included offense that the capital defendant never requested.

Although the above reasons are alone sufficient, in Schad v. Arizona, 501 U.S. 624, 111 S. Ct. 2491 (1991), the Supreme Court made plain that the Beck rule does not apply in situations, like Maples's, where the jury was instructed on one lesser included non-capital offense that had evidentiary support, but the defendant argues the jury should have received instructions on every potential lesser included non-capital offense supported by the evidence, or at least a different one than that given. Schad, 501 U.S. at 646-48, 111 S. Ct. at 2504-05. The Supreme Court in Schad concluded that Beck "simply is not implicated . . . , for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence." Id. at 647, 111 S. Ct. at 2505.[21]

Lastly, a lesser included non-capital offense instruction is warranted only when the evidence supports such an instruction. As Maples's own attorney told the jury[22] and as the Alabama Court of Criminal Appeals found, the evidence did

[21]The Supreme Court's reasoning in Schad applies with even more force in the present case, because in Schad the lesser included robbery charge requested by the Schad defendant would have been consistent with that defendant's theory at trial, whereas here a manslaughter due to intoxication charge would have stood in direct conflict with Maples's own trial theory.

[22]Indeed, Maples himself stated in his confession that he was not drunk before he killed Terry and Robinson, and he called witnesses who gave testimony indicating he was not

28

not support an intoxication theory.[23]

For each of the above reasons, the Alabama state courts' decision that federal law did not require the trial court to <u>sua sponte</u> give a jury instruction on the non-capital offense of manslaughter due to involuntary intoxication was neither contrary to, nor an unreasonable application of, established Supreme Court precedent.

## IV. CONCLUSION

We affirm the district court's denial of Maples's § 2254 petition.

**AFFIRMED.**

---

intoxicated the night of the killings.

[23]Maples also cites <u>In re Winship</u>, 397 U.S. 358, 90 S. Ct. 1068 (1970), but it is equally inapposite. In <u>Winship</u>, an appeal from a juvenile delinquency proceeding, the Supreme Court determined that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>Winship</u>, 397 U.S. at 364, 90 S. Ct. at 1073. The <u>Winship</u> rule is not implicated here because the jury was properly instructed on all the necessary elements of the crimes for which Maples was convicted, as well as the reasonable-doubt standard it must apply.

BARKETT, Circuit Judge, dissenting:

I cannot agree that Maples's ineffective assistance of counsel claims are procedurally barred. As such, the claims should be reviewed on the merits. As the majority opinion explains in detail, a petitioner's habeas claims are procedurally defaulted – and therefore rendered unavailable for review by this court – when, inter alia, the state rule on which the default is based is "adequate and independent." However, Alabama's law on out-of-time appeals, which forms the basis of Maples's claim in this case, is not "adequate" pursuant to the Supreme Court's definition of that term. Maples therefore has not procedurally defaulted. Accordingly, there is no procedural bar to the consideration of the ineffective assistance of counsel claims that Maples attempts to bring before this court. The Supreme Court defines an "adequate and independent" state court decision as one "[which] rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). To be considered "adequate" by a federal court, the state procedural rule must be both "firmly established and regularly followed." James v. Kentucky, 466 U.S. 341, 348 (1984). In other words, the rule must be "clear [and] closely hewn to" by the state for a federal court to find it to be adequate. Id. at 346. The "adequacy" requirement thus means that the procedural rule "must not be applied

30

in an arbitrary or unprecedented fashion." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). If the rule is not firmly established, or if it is applied in an arbitrary or unprecedented fashion, then it is not adequate to preclude federal review. Card v. Dugger, 911 F.2d 1494, 1516 (11th Cir. 1990). In this case, the rule used to procedurally bar review in the state court was not firmly established or, if interpreted as firmly established, was applied to Maples in an unprecedented and arbitrary fashion.

As demonstrated by Marshall v. State, 884 So. 2d 898, 899 (Ala. Crim. App. 2002), overruled on other grounds, 884 So. 2d 900 (Ala. 2003),[1] the rule which the majority applies is not firmly established and has been arbitrarily applied to Maples. As in this case, the defendant in Marshall did not receive notice when his first Rule 32 petition for post-conviction relief was denied. His time to appeal the denial thus lapsed before he was even aware an order had been entered. When Marshall was finally notified, he filed a second Rule 32 petition which asked the court to permit him to file his appeal out of time. The Alabama Court of Criminal Appeals granted that petition.

---

[1] The Alabama Supreme Court held that Marshall should have petitioned for a writ of mandamus rather than seeking relief as he did. Marshall v. State, 884 So. 2d 900 (Ala. 2003). This procedural change did not affect Marshall's underlying claims. In any event, Alabama subsequently amended its rules of civil procedure to permit Marshall's method of challenging the denial of his out-of-time appeal of his Rule 32 petition. This dissent therefore uses the procedural terminology interchangeably.

31

The majority finds that <u>Marshall</u> permits an out-of-time appeal basd on failure to notify the defendant personally only when the court has assumed a duty to notify the defendant personally of an order in his case.  Only then would the court's failure to notify the defendant violate his rights.  Applying that rule to the issues in <u>Marshall</u>, this majority concludes that the <u>Marshall</u> court allowed Marshall an out-of-time appeal because the court had assumed a duty to notify Marshall of its decision after he wrote to the clerk of courts inquiring about the status of his case.  The court then allegedly violated that duty – thereby permitting an out-of-time appeal – when its clerk failed to respond.

That may be the rule that <u>Marshall</u> suggested; but it is not the rule that <u>Marshall</u> applied.  Like Maples, Marshall did not begin filing his requests with the clerk until <u>after</u> the order denying his Rule 32 petition had been decided.[2]  As Marshall himself explained, he made the requests "because he had no idea that his first petition had been dismissed."  <u>Marshall</u>, 884 So. 2d at 899. Again, like Maples, Marshall was represented by counsel in his Rule 32 proceeding; neither

---

[2] If Marshall's filings with the court are to be considered at all relevant – which they should not be – then they actually <u>undermine</u> the majority's claim that the Rule 32 court assumed a duty to Marshall. The Rule 32 court had found it "obvious," on the basis of Marshall's filings, "that he could have found out that an order was entered if, in fact, no copy had been mailed to him." <u>Marshall</u>, 884 So. 2d at 899 (quoting Rule 32 court's dismissal order). The appellate court did not reject this conclusion. Instead, it held that Rule 32 court's conclusion meant only that the court did not dispute Marshall's allegation that he never received a copy of the order. <u>Id.</u>

32

Maples nor Marshall were proceeding pro se. Counsel for both Marshall and Maples received a copy of the order denying the their clients' Rule 32 petitions, and both sets of counsel failed to timely act on that order. Despite these indistinguishable facts, the Marshall court granted an out-of-time appeal, and the Maples court did not. The Marshall opinion thus provides no clear basis for distinguishing the facts of Marshall's out-of-time appeal from the facts of Maples's out-of-time appeal. This inconsistency in the application of Alabama's law on granting out-of-time appeals renders the rule an inadequate ground on which to bar federal review of Maples's claims.

Marshall aside, the interests of justice also require that Maples be permitted review of his claims when the alleged default of those claims occurred through no fault of his own. Rather, any such default is entirely the fault of his post-conviction counsel, and this court is allowing him to be put to death because of that negligence. "[T]he penalty of death is different in kind from any other punishment imposed under our system of criminal justice." Gregg v. Georgia, 428 U.S. 153, 188 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). Due to this "unique nature of the death penalty," the Eighth Amendment demands "heightened reliability . . . in the determination whether the death penalty is appropriate in a particular case." Sumner v. Shuman, 483 U.S. 66, 72 (1987). As a result, the

33

Supreme Court has recognized that "in capital cases, it is <u>constitutionally</u> required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to the imposition of a death sentence." <u>Id.</u> (emphasis in original; internal quotation and citation omitted). If the facts alleged by Maples to support his claims of ineffective assistance of counsel are true, then the jury in this case was left without sufficient information of Maples's character and individual circumstances when it returned a verdict for the death penalty.[3]

Notwithstanding the supposed procedural bar in this case, the imposition of the death penalty and the heightened reliability that it requires, <u>Woodson v. N.C.</u>,

---

[3] Maples's federal habeas petition contains over ninety pages of allegations of ineffectiveness of Maples's trial counsel. Over thirty of these pages are dedicated to allegations of ineffective assistance during the sentencing phase, when the jury determined, by a vote of 10-2, that Maples should be sentenced to death. Notably, under Alabama law, the jury's recommendation for a sentence of death must be based on the vote of at least ten jurors. Ala. Code § 13A-5-46(f). Thus, if even <u>one juror</u> who voted for the death penalty instead had voted for life imprisonment, the jury verdict would have been for life imprisonment rather than death.

Among the allegations are that Maples's trial counsel, neither of whom had ever conducted a sentencing phase in a capital trial, were ineffective for failing to adequately investigate and present evidence of: 1) Maples's abuse and abandonment by his mother, who suffered from mental illness; 2) Maples's own mental health, especially in light of his mother's mental illness and evidence that his maternal grandmother was also mentally ill; 3) Maples's depression and his several attempts at suicide; 4) Maples's struggle with addiction to drugs, including crack cocaine, crystal methamphetamine, and LSD, and also his voluntary admittance to a drug treatment program; 5) Maples's participation in team sports and regular attendance at church when he was younger; and 6) Maples's cooperation with and assistance to the local police department in its enforcement of drug law violations. Moreover, Maples points to several pieces of mitigating documentary evidence that counsel had during the sentencing phase but never presented to the jury, such as Maples's application to the drug treatment program that chronicled his past drug use and suicide attempts, and documentation that clearly confirmed Maples's assistance to the local police in the apprehension of a prominent drug dealer.

428 U.S. 280, 305 (1976) (plurality opinion), necessitate federal review of Maples's ineffective assistance claims.[4] Ultimately, "[h]abeas corpus is governed by equitable principles." Munaf v. Geren, — U.S. —, 128 S. Ct. 2207, 2220 (2008) (quotation and citation omitted). Barring federal review of claims defaulted under state law serves the dual principles of comity and federalism, Coleman v. Thompson, 501 U.S. 722, 730 (1991). Nevertheless, in certain cases, like the present case, those equitable principles "must yield to the imperative of correcting a fundamentally unjust [sentence]." Engle v. Isaac, 456 U.S. 107, 135 (1982). Without review of Maples's claims, we cannot ascertain the reliability of Maples's death sentence.

Maples was entitled to an out-of-time appeal under Alabama precedent established in Marshall v. State, 884 So. 2d 898, 899 (Ala. Crim. App. 2002). Because he was denied that opportunity, the merits of his claims must be examined by the district court to determine whether or not his sentence is reliable. If AEDPA bars review in such circumstances, then its constitutionality would appear questionable in this regard.

I respectfully dissent.

---

[4] Ineffective assistance of post-conviction counsel cannot establish cause and prejudice to excuse a procedural bar, see Coleman v. Thompson, 501 U.S. 722, 752-54 (1991). Nevertheless, the federal habeas court should be able to consider the ineffective assistance of post-conviction counsel when determining if equity requires a review on the merits of otherwise procedurally barred claims. As noted above, the imposition of the death penalty requires heightened reliability, and the failings of post-conviction counsel should not prevent the federal courts from engaging in a searching review of a capital sentence.